392 A.2d 869

**COMMONWEALTH of Pennsylvania**

v.

**Michael JOHNSTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 12, 1977.

Decided Oct. 20, 1978.

430

Marilyn C. Zilli, Assistant Public Defender, Harrisburg, for appellant.

Marion E. MacIntyre, Second Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before WATKINS, President Judge and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

The appellant, Michael Johnston, was convicted, after a jury trial, of charges of aggravated assault, robbery and conspiracy. In the instant direct appeal[1] to our Court, he raises several allegations of error.

■ He first contends that the evidence was insufficient as a matter of law to sustain the convictions. In reviewing such a claim, we must determine whether, accepting as true all of the evidence, regardless of whether it is direct or circumstantial, upon which, if believed, the fact-finder could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged. *Commonwealth v. Reeves*, 237 Pa.Super. 443, 352 A.2d 167 (1975).

■ When considered in light of the foregoing, the record shows that on the afternoon of December 30, 1974, an undercover narcotics agent of the Pennsylvania Bureau of Drug Control, Frank Brinser, was driving around Harrisburg, with the objective of trying to purchase controlled substances. He was accompanied by a police informant named George Waters. As they passed the Three Lucky Dots Bar, Waters observed the appellant, Michael Johnston, standing in front of the bar. Waters was acquainted with the appellant and knew him to be capable of supplying

1. An earlier direct appeal to this Court, after denial of post-trial motions and sentencing, was non prossed on September 24, 1976. Subsequently, appellant filed a petition under the Post Conviction Hearing Act, claiming, inter alia, ineffective counsel based upon defense counsel's failure to file a brief in that initial appeal. After a hearing on the Petition, appellant was granted the right to file a direct appeal nunc pro tunc. The instant appeal is pursuant to that Order by the lower court.

drugs. Brinser stopped the vehicle and Waters asked Johnston to approach the vehicle for conversation. Waters inquired about drugs and the appellant stated that heroin was available. Johnston then went inside the bar, ostensibly to determine the quantity available. Brinser moved the vehicle to a parking spot across the street from the bar. After a short time, the appellant came out of the bar and joined Brinser and Waters in their vehicle. He informed the officer and informant that he would be able to arrange their purchase of a specified amount of heroin. During this conversation, the appellant pointed out another individual, standing on the sidewalk approximately twenty to thirty yards from the vehicle, as the person from whom the actual drug purchase was to be made. That individual was later identified as one Jeffrey Clark. Johnston caught Clark's attention to attract him to the vehicle, but Clark shook his head in a negative manner and then walked into the bar. The appellant then exited the vehicle, followed Clark into the bar, and a short time later returned to announce that the purchase would have to be made inside the bar, and that Brinser could join him in the bar.

Brinser approached the bar with the appellant. While walking, Brinser stopped, removed some currency from his sock, counted out $150.00 for the drug purchase, and placed the remainder of his money back in his sock. One Howard Cobb was approaching the bar from the other side of the street and he entered the bar after Brinser and the appellant.

Once inside the bar, the appellant and Brinser joined Jeffrey Clark in the bathroom. The appellant was still holding the door partially opened and Brinser noticed Cobb lurking just outside the door. Nobody said anything about the drug purchase and Brinser asked Johnston who Cobb was. Johnston simply said, "Watch for that dude." The door was partly opened at that point and Cobb came in while the appellant started to "slide out" of the doorway. Cobb immediately approached the agent, pushed him and demanded the money. Johnston was still standing outside the

partially opened bathroom door and Clark was still in the bathroom. Brinser refused to give up his money and said he was going to deal through the appellant. At this point Cobb suddenly attacked Brinser, punching him savagely in the face several times, while demanding the money. Brinser bent over to shield himself and held out the $150.00, which either Cobb or the appellant took. After a pause of a couple of seconds, Cobb again demanded money. Brinser saw the appellant and another man now inside the bathroom, effectively blocking the door. Cobb continued to demand money while raining more blows upon the officer. During this time, one of the individuals by the door, either Johnston or the other person, said, "You better give him all the money or we will kill you." The officer, fearing for his life, pulled out a hidden pistol and fired two shots towards Cobb, hitting him twice. After the shooting, Brinser quickly fled the bar. The officer eventually had to undergo treatment by a plastic surgeon as a result of the facial wounds he suffered in the attack.

Based upon the evidence recited above, we believe there is ample evidence to sustain the appellant's conviction. The evidence in the case leads to the strong conclusion that Johnston was part of a conspiracy with Clark to sell drugs to the agent, and further, a participant with Cobb in the efforts to rob Brinser, by use of force, in the bathroom where appellant led him. Appellant's conduct in setting up the drug transaction cannot be seriously questioned. While the evidence did not indicate that appellant personally attacked or robbed the agent along with Cobb, we find it particularly noteworthy that the appellant was not only identified by Brinser as one of those by the door to the bathroom when the attack occurred, but also that he stood inside the bathroom, blocking the doorway with another person, when one of them said, "you better give him all of the money or we will kill you." On the record as a whole, the evidence was sufficient to support the determinations of guilt by the jury as to appellant's complicity in a conspiracy

to sell drugs and participation in a plan which resulted in the robbery of and aggravated assault upon Frank Brinser.[2]

The appellant next contends that certain remarks by the prosecutor constituted such error as to entitle the appellant to a new trial. The first comment was made in the prosecutor's opening address to the jury, which was not transcribed. However, the record shows the following colloquy, at the time:

DEFENSE COUNSEL: Your Honor, may I interrupt and object?

THE COURT: You have objected.

DEFENSE COUNSEL: Yes, I would like to say [the prosecuting attorney] in this case has said this case deals with heroin and with the state's effort, continuing effort to subdue the use of heroin and what have you and I think that statement is inherently prejudicial to the defendant.

THE COURT: Your objection is noted, sir. You have an exception. I think it is fair comment keeping in mind you are in an opening address. [the prosecuting attorney] and (sic) I assume you are going to make it very brief.

The second comment challenged was in the prosecutor's closing argument to the jury. This argument began at 3:25 P.M., and ended at about 4:00 P.M. During the argument, the following appears in the record:

DEFENSE COUNSEL: Your Honor, I am going to have to object to that. The [prosecuting attorney] said—

THE COURT: We note your objection. You have an exception. Carry on.

DEFENSE COUNSEL: I have no record though.

2. In an earlier appeal, *Commonwealth of Pennsylvania v. Clark*, 256 Pa.Super. 97, 389 A.2d 619 (1978) Clark who was a co-defendant of Michael Johnston was found guilty of robbery, aggravated assault and conspiracy. We vacated the convictions of the charges of robbery and aggravated assault and upheld the conviction of the charge of conspiracy. The proof in the instant case of involvement of Michael Johnston in the robbery and aggravated assault is substantially greater than that which existed to implicate Clark.

THE COURT: We will put it on after.

At the conclusion of the prosecutor's argument, the court recessed the trial and dismissed the jury. After the jurors departed, the court permitted counsel to raise the objection previously noted:

THE COURT: You want to put something on the record, [defense counsel] concerning the closing address of [the prosecuting attorney]?

DEFENSE COUNSEL: Yes, I do, Your Honor. I believe [the prosecuting attorney] stated in his closing remarks that "you heard defense witnesses, they were at the Lucky Dots, what were they doing up there. Everybody knows that is the knub (sic) of narcotics in the Harrisburg area" and I submit that wasn't in evidence to begin with and highly inflammatory.

THE COURT: Before you go on, I will state my recollection which is different than yours. First of all, [the prosecuting attorney] spoke to the jury for thirty-five minutes which was less time in minutes than either you spoke or [other defense counsel]. I mean individually, not jointly, and in that thirty-five minutes of remarks he dwelled on the subject of narcotics no more than in my judgment fifteen seconds and what he said a (sic) I recall it, the closing addresses were not transcribed, there was no request they be transcribed. My recollection is that [the prosecuting attorney] said to the jury in substance that based upon the testimony as to persons who were frequently going to the Three Lucky Dots Bar that the jury could or might conclude that it is a hub of narcotics activity in the City of Harrisburg. I think that was his statement. It might have been a touch beyond the evidence although I think it is reasonably inferred from the evidence that people of known reputation for dealing in narcotics frequent (sic) the Three Lucky Dots bar at the time of this occurrence. [the prosecuting attorney], do you want to add anything to the record?

THE PROSECUTING ATTORNEY: Yes. It was my recollection that Detective Sergeant Ulrich testified that not in the exact words I used concerning the hub of narcotics activity, but he did say it was the center of traffic in my recollection, the Three Lucky Dots was the center of traffic and that is what I was referring to.

THE COURT: Your objection is on the record.

DEFENSE COUNSEL: I would like to say I did make a notation of it at the time it was said and the only thing that I find that would be prejudicial about it is painting the defense witnesses as participating in the hub of narcotics activity.

THE COURT: I didn't recall him stating that the defense witnesses, at no time did I get that from it. I did not think he said anything about the defense witnesses. I believe he said witnesses for the defendant perhaps named persons who were later identified as dealing in narcotics. That is my recollection.

DEFENSE COUNSEL: Thank you, Your Honor.

■ Initially, we note that appellant claims that it was reversible error to not allow defense counsel to timely preserve the issue of allegedly improper remarks by the prosecuting attorney. The trial judge is granted broad discretion in the conduct of trial, and since we do not find that the appellant failed to adequately preserve the issue of alleged improper comments, we fail to discern any prejudice to appellant in the trial judge's decision to delay the actual statement of the defense objection for a few minutes, until after the jurors had been excused. Also, the appellant argues that the comments of the prosecuting attorney were prejudicial. We cannot agree.

■ A prosecutor is clearly obligated to perform his duties in both an intelligent and impartial manner. *Commonwealth v. Toth*, 455 Pa. 154, 314 A.2d 275 (1974). While he must be judicious in his remarks, not every improper comment will warrant a mistrial. *Commonwealth v. Wiggins*, 239 Pa.Super. 256, 361 A.2d 750 (1976). "The language

must be such that its 'unavoidable effect would be to preju-
dice the jury, forming in their minds fixed bias and hostility
toward the defendant, so that they could not weigh the
evidence and render a true verdict.'" *Commonwealth v.
Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1972), quoting
*Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292
(1968). Even if we accept the defendant's position as to
what was stated by the prosecuting attorney, and disregard
the court's contemporaneous recollection of a less harsh
comment, we still cannot conclude that the statements in
question would have had the "unavoidable effect" of creat-
ing a "fixed bias and hostility" towards appellant in the
jurors' minds. While the appellant argues strongly that the
reference to the Three Lucky Dots bar as a "hub" of
narcotics activity should merit a new trial, such a comment
was not an untrue summary of continual references during
the trial to the tavern as a situs for drug related activities.
We note that the trial judge very carefully and correctly
instructed the jurors that the addresses of counsel were not
part of the evidence in the case and not to be considered by
the jurors as evidence on which to base any part of their
verdict. We thus reject appellant's contentions of reversible
error based upon comments by the prosecuting attorney.

The appellant next contends that the lower court
erred in denying his pre-trial motions requesting that the
prosecution disclose the names and addresses of witnesses
the Commonwealth intended to call at trial. Appellant
sought such information by the vehicle of an application for
a bill of particulars. The Commonwealth did provide a list
of the witnesses it planned to call, on the day scheduled for
trial, when a hearing was held on the appellant's request.
The appellant also sought copies of any pretrial statements
which such witnesses may have furnished during the investi-
gation of the case. While the Commonwealth disclosed
which witnesses had given statements, it maintained that
such statements need only be disclosed to the defense after
the witness testified on direct examination, and before the
defense cross-examination. The lower court refused to com-

pel the Commonwealth to turn over the statements to the defense prior to trial.

We initially note that appellant filed his request for a bill of particulars, which arguably was an incorrect vehicle for seeking such information. See Pennsylvania Rule of Criminal Procedure 304 and also *Commonwealth v. Mervin*, 230 Pa.Super. 552, 326 A.2d 602 (1974), where our Court discussed the purpose of a bill of particulars and declared that it is not designed to perform the function of a discovery device with regard to the Commonwealth's evidence. Even if we ignore the procedural defects in appellant's pretrial application, our reference to Criminal Rule 305, which, *inter alia*, concerns pretrial discovery of witness statements, convinces us that the claim on appeal lacks merit. Under Rule 305B(2), the trial court is permitted discretion in granting such requests for disclosure. In the instant case, the appellant merely argued that he would be prejudiced by not having the statements until after the witness testified. No *specific* example of possible prejudice was asserted, and on this record, we cannot hold that the lower court erred in denying the request. Moreover, on appeal, we again note that no specific type of prejudice is claimed to have resulted by the court's ruling. In light of all of these factors, we find no merit in the instant allegation of error.

■ Johnston maintains on this appeal that the trial court erred in permitting the Commonwealth to introduce evidence of his prior criminal record in order to impeach his credibility. The conviction in issue was within a few months prior to the trial in this case and was for two counts of theft by receiving stolen property. Suffice it to state that the trial court indicated that it considered all of the factors mandated in *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). We see no abuse of discretion by the trial court in concluding that evidence of the prior conviction could be admitted. The court also carefully instructed the jurors to consider such past record only for purposes of assessing credibility. We find no error.

■ Next, appellant urges us that the lower court erred in refusing to read his requested seventh point for charge to the jury. This point for charge concerned the elements of the crime of conspiracy. The law of conspiracy was clearly and correctly covered in the court's charge to the jurors, and the court's refusal to read, verbatim, the appellant's point for charge on the same subject was not error. See *Commonwealth v. McComb*, 462 Pa. 504, 341 A.2d 496 (1975); *Commonwealth v. Newsome*, 462 Pa. 106, 337 A.2d 904 (1975).

■ Last, the appellant maintains that it was reversible error for the court to allow the prosecution to cross-examine the appellant about his drug addiction and habit. The record shows that the defense itself inserted this subject into the jurys' considerations when the appellant testified freely on direct examination about his deep involvement with drugs and their deleterious effect upon him. The trial judge is granted broad discretion concerning decisions on the scope of cross-examination (*Commonwealth v. Bailey*, 450 Pa. 201, 299 A.2d 298 (1973)) and no abuse of that discretion is apparent here.

Affirmed.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.