426 A.2d 657

**COMMONWEALTH of Pennsylvania,**

v.

**Ebben BULLOCK, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1979.

Filed Feb. 20, 1981.

Petition for Allowance of Appeal Denied July 17, 1981.

602

Hugh C. Clark, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and CAVANAUGH, WATKINS, MONTGOMERY and HOFFMAN, JJ.

CERCONE, President Judge.

Appellant, Ebben Bullock, was convicted of third degree murder following a jury trial before the Honorable Matthew W. Bullock, Jr., of the Court of Common Pleas of Philadelphia County. After the denial of post-verdict motions and the imposition of sentence, appellant filed a direct appeal to the Supreme Court of Pennsylvania which thereafter transferred the appeal to be heard by a panel of our Court. The decision rendered by the panel[1] reversed the judgment of sentence and granted appellant a new trial. The Commonwealth then sought and obtained en banc reargument before our Court on November 6, 1979. Having reconsidered the case, we affirm the decision of the lower court and uphold appellant's conviction for third degree murder.

Appellant raises a single allegation of error: That his trial counsel was ineffective for failing to object to the allegedly prejudicial remarks made by the prosecutor during his summation to the jury and for failing to move for a mistrial on the basis of these statements.

---

1. Former Chief Justice Michael J. Eagen of the Supreme Court of Pennsylvania, Judge J. Sydney Hoffman of our Superior Court and Judge Warren K. Hess of the Court of Common Pleas of Berks County, Pennsylvania comprised the panel.

According to the facts of the case, appellant and the deceased, Robert Berk, engaged in a heated argument on the evening of August 2, 1976, on the street in front of appellant's house. After a period of time, appellant went into his house and reappeared with two kitchen knives and proceeded to stab the deceased in the chest. Alene Bradley, a friend and neighbor of appellant, was an eyewitness to the stabbing. She testified that appellant was in possession of two knives, that she saw appellant's "hands go all over" when he faced the victim, that when she saw appellant make a motion towards deceased's chest, that she observed a "little flash," "like something shining in the light" in appellant's hands, that the deceased's chest was bleeding, and that she saw a knife with some blood on it in the hands of appellant.

Another witness, Rose Harrison, stated that appellant had been arguing with the deceased, that she observed appellant wielding a knife in each hand when he returned to the street, and that she never saw the deceased with a knife or any other weapon that night.

Dr. Demetri L. Castastavlas, the medical examiner, testified that he found a three to four inch "stab wound in the chest and a superficial cut in the right upper abdomen." He stated the cause of death was the "stab wounds of the chest."

Joseph Varozilchak, chemist for the Philadelphia Police Department, examined the knife which had been seized in appellant's house and found fibers and blood present on the blade. Comparing those fibers to the clothing of the victim, he concluded that the fibers on the blade matched the fibers from the sweater of the deceased.

Finally, appellant took the stand and testified that he argued with the deceased, that he went into his house to get the two knives because the deceased had a knife and threatened to kill him. Although appellant denied stabbing the deceased, he did state that his knife "hit [Berk]."

Appellant alleges that he was denied effective assistance of counsel at trial because his attorney failed to object to

four allegedly inflammatory comments made by the prosecutor during closing argument and also failed to move for a mistrial on the basis of these allegedly inflammatory statements.[2] The closing arguments of counsel were recorded and transcribed. Appellant claims prosecutorial misconduct with regard to four statements. In finding fault with the following excerpts, appellant asserts that it was improper for the prosecutor to reveal to the jury his conclusions about the credibility of appellant as a witness:

I.

If you will recall the defendant's testimony yesterday, you will remember or recall how hard I tried to pin him down to get some facts to show that he was mistreated. How many times did I ask him, 'Mr. Bullock, who did you tell that you were mistreated, who beat you? Give the name of your friends that you told. Who did you tell up at the prison, Mr. Bullock? Did you tell the judge at the arraignment court where you were taken from the homicide division? Give me the names, Mr. Bullock. I want to subpoena them for the jury.' Isn't it convenient that he could not give us any names? Prior to the luncheon break, ladies and gentlemen, I thought I had pinned him down to the guard on E block that he had told. After lunch he backed up from that statement. Maybe because at that time we had secured a stipulation by counsel that the prison records would show no such claim of injury that he made, no such complaint at any time. He mentioned a sick slip that he filled out when he was on E block. There is no such sick slip in existence. The stipulation told you ladies and gentlemen, that if such a complaint was made,

2. We recognize that the issue of trial counsel's ineffectiveness is properly before this Court because appellate counsel did not represent appellant at trial. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975). Moreover, since the closing arguments of counsel were recorded and transcribed, the record permits us to decide the issue without remanding to the lower court for an evidentiary hearing to determine whether counsel's failure to object had some reasonable basis designed to effectuate his client's interest. *See Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975).

it would be a record in the prison records and there would be medical records and there was nothing there. *There was nothing there, ladies and gentlemen, because the defendant was not actually telling you the truth yesterday.* And again, ladies and gentlemen, I don't want to dwell on this point, but the claims he made are too serious. He is claiming that he was beaten by two detectives. Now, of course, these two detectives testified and they testified that no such thing happened. (emphasis supplied)

## II.

Ladies and gentlemen, I specifically asked the defendant if you were beaten horrendously where are your injuries, where are your injuries, and he says well, they didn't leave any scars. But at first he made a mistake and said, 'My face was swollen.' And then later he tried to back down because—he did not think that we would be able to secure photographs taken almost an hour after he had been injured by the homicide detectives? And you saw the photographs yesterday. That was not a swollen face. There was nothing the matter with that face. *You see, he was caught in an untruth. We can't always prove an untruth to you directly, but we were able to do so here by these photographs,* and that is not all, ladies and gentlemen. (emphasis supplied)

## III.

So therefore, ask yourselves, ladies and gentlemen, should you believe his testimony when he said that he was mistreated by the police, or was this a desperate attempt to arouse you against the Philadelphia Police so that you will forget about his guilt in the stabbing death of Mr. Burke? I suggest to you, ladies and gentlemen, that is what he was trying to do. Don't take your eye off of the ball. *This man was not beaten.* (emphasis supplied)

Appellant specifically claims that the above-stated comments of the prosecutor not only conveyed the prosecutor's

interpretation of the various inconsistencies in appellant's trial testimony, but also offered the prosecutor's opinion that appellant had lied to the jury during the course of his testimony.

When assessing the effectiveness of trial counsel, we must examine the record to see whether it supports a conclusion that the particular course chosen by counsel had some reasonable basis to effectuate his client's interest. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Instantly, before inquiring into the basis for counsel's failure to object to the allegedly inflammatory statements, we must determine if the issue itself is of arguable merit. *Commonwealth v. Glass*, 486 Pa. 334, 405 A.2d 1236 (1979); *Commonwealth v. Sherard*, 483 Pa. 183, 394 A.2d 971 (1978); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). A review of the record is therefore necessary.

At trial, appellant took the stand and testified that the confession transcribed by the police was inaccurate, and that his signature had been forged by the police. Appellant stated further that he had been beaten by the interviewing detectives, and as a result, the "whole side of his face was swollen" and he "could not walk on his right leg for a week." He said that he asked a guard at the Detention Center to press a complaint, and that although he turned in a "pink slip" or "sick slip" at the Detention Center, he was never treated. On cross-examination, appellant first denied making any statement to the police, but later admitted signing some papers and said these papers had been altered by the police. Moreover, appellant admitted that he had never mentioned the beating at any prior court proceeding, but that he had only told his mother of the incident. Appellant was shown photographs of himself which had been taken immediately after being interviewed and which did not reveal a swollen face. Confronted with this incontrovertible evidence, appellant then claimed that the inside of his lip had been cut. Finally no "sick slip" substantiating appel-

lant's alleged injuries was ever found in appellant's prison record.[3]

Although our cases are clear that prosecuting attorneys may not inject "highly prejudicial personal opinion of [an] appellant's credibility into evidence, thereby . . . improperly intruding upon the jury's exclusive function of evaluating the credibility of witnesses," *Commonwealth v. Potter*, 445 Pa. 284, 287, 285 A.2d 492, 493 (1971), the challenged remarks presently in issue are not statements of personal opinion, but instead are accurate statements and legitimate inferences based upon the evidence previously presented at trial. Prejudice has been consistently found by our judiciary only where the remarks of the prosecutor have been unsupported by any factual evidence and thus, have merely reflected the prosecutor's personal judgment concerning the defendant's veracity. *See e. g. Commonwealth v. Kuebler*, 484 Pa. 358, 399 A.2d 116 (1979); *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971). It is well established that the prosecutor's closing argument must be limited to the facts of the record and all reasonable inferences drawn therefrom. *Commonwealth v. Glass, supra; Commonwealth v. Pfaff*, 477 Pa. 461, 384 A.2d 1179 (1978); *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977). *See also* ABA Code of Professional Responsibility EC 7–13. In this respect, the prosecutor was not required to ignore the many contradictions that riddled appellant's testimony.

Herein, by pointing out the inconsistencies in appellant's statements, the prosecutor's closing argument merely enumerated two "untruths" actually revealed by appellant during the course of his testimony: (1) the appellant's statement that he submitted a "sick slip" at the Detention Center, although no such slip could be found in appellant's prison record; and (2) appellant's statement that he had been beaten by the police and suffered a swollen face, although the photograph of appellant taken immediately

---

**3.** Defense counsel stipulated that if a "sick slip" existed, it would have been contained in appellant's prison record.

following his interview with the police did not indicate any swelling. The conflicting evidence introduced at trial also permitted the prosecutor to suggest in his summation that appellant's testimony concerning the beating he received by the police was false. The record establishes that the prosecutor did limit his closing statements to the facts of the case as well as the reasonable inferences drawn therefrom. Accordingly, the prosecutor cannot be faulted now for misconduct. *See Commonwealth v. Glass, supra.*[4]

■ Moreover, when determining whether statements in a prosecutor's final argument to the jury are reversible error, the Supreme Court of Pennsylvania has established the following criterion:

Where, under all the circumstances of the case, the verdict rendered is a just one, the language of the prosecuting officer which will justify a reversal must be such that its unavoidable effect would be to prejudice the jury, forming in their own minds a fixed bias and hostility toward the defendant, so that they could not fairly weigh in his behalf such circumstances of doubt, extenuation, or degree of guilt that may be present in the case, and thus make them unable to render a true verdict. *Commonwealth v. Hoffman,* 439 Pa. 348, 335, 266 A.2d 726, 730 (1970), quoting from *Commonwealth v. Meyers,* 290 Pa. 573, 139 A. 374 (1927). *See also Commonwealth v. Hamilton,* 460 Pa. 686, 334 A.2d 588 (1975).

By also applying this standard, we conclude that the language used by the prosecutor did not rise to the level of reversible error. To reiterate, because the prosecutor's remarks were based upon the conflicting statements made by appellant during his trial testimony and upon the indisputa-

---

**4.** We recognize that three of the seven participating Justices in *Glass* concurred in the result and one dissented, thereby eviscerating the precedential value the rationale in that case otherwise might have. [Indeed, were it not for the concurring votes, *Glass* would be controlling in this case]. Nevertheless, we are persuaded by the analysis of Justice Nix in *Glass* with respect to prosecutorial comments on the veracity of the accused's testimony at least when that testimony is directly contradicted by testimony of disinterested witnesses or by prior inconsistent statements of the accused, himself.

ble factual evidence revealed at trial,[5] appellant was not deprived of a fair trial. *Cf. Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

Finally, we note the trial judge's charge cautioning the jurors about the weight to be given the arguments of counsel:

> "The speeches of counsel are not part of the evidence, and you should not consider them as such . . . you should be guided by each lawyer's argument only to the extent that it is supported by the evidence. However, you are not required to accept the argument of either lawyer. It is for you alone to use your own reasoning and commonsense to decide the case based on the evidence as it was presented from the witness on the witness stand . . . ."

Such a cautionary instruction further insured that the jurors would not be unduly influenced by either the arguments of the prosecutor or defense counsel. *See e. g. Commonwealth v. Ashmore,* 266 Pa.Super. 181, 403 A.2d 603 (1979); *Commonwealth v. Walls,* 261 Pa.Super. 321, 396 A.2d 419 (1978).

After reviewing both the record and the applicable case law dealing with prejudicial remarks made during summation, we find that the prosecutor's narration of the evidence was accurate and not unfair. Thus, any objection by defense counsel or motion for mistrial would have been without merit, and a finding of ineffectiveness cannot be premised upon counsel's failure to pursue and preserve a baseless claim.[6] *Commonwealth v. Martin,* 479 Pa. 63, 387 A.2d 835 (1978); *Commonwealth v. Hubbard, supra.*

■ Appellant also finds objectionable the concluding statement made by the prosecutor in his summation; appellant characterizes the following remark as a "thinly veiled attempt to divert the jury's attention from the proper consideration of the facts."

**5.** This evidence included the photograph of appellant taken after his interview with the police, which showed no swelling, and the fact that a "sick slip" was not contained within appellant's prison record.

**6.** Had defense counsel objected, it would have only reemphasized that appellant's testimony was belied by the evidence, possibly damaging appellant's case.

"I say to you, ladies and gentlemen, that you are the only people that can do justice and I say to you, ladies and gentlemen, if justice is to be done in this case, I ask you to return only one verdict and that is guilty of murder, guilty of murder in the first degree. Thank you."

This last contention is also without merit and does not support a claim of ineffectiveness. The prosecutor in making his last statement was asking the jury to render a verdict consistent with the evidence presented by the Commonwealth. During the closing argument, the prosecutor may properly argue that the evidence would support a particular verdict. And, once again we note the cautionary charge of the trial judge instructing the jury to decide the case on the basis of the evidence presented and not on the basis of the lawyer's arguments. This final remark, then, did not have the unavoidable effect of prejudicing the jury. Consequently, a claim of ineffectiveness cannot be premised upon it. *Commonwealth v. Martin, supra; Commonwealth v. Hubbard, supra.* Furthermore, in his closing argument, a prosecutor may properly argue that a particular verdict is qualified by the evidence presented in the case. *Commonwealth v. Scott,* 469 Pa. 258, 365 A.2d 140 (1976).

Order of the lower court affirmed.

MONTGOMERY, J., files a dissenting opinion in which HOFFMAN, J., joins.

MONTGOMERY, Judge, dissenting:

I dissent.

While the District Attorney's comments may have been based on substantial testimony and a fair deduction of the evidence, and while admittedly they were not part of a lengthy harangue which appealed to the passions of the jury or invoked improper sympathy for the victim, the comments in the final analysis must be characterized as an expression of the District Attorney's personal opinion of the appellant's

veracity. Such conduct has clearly been held to be an improper intrusion upon the jury's exclusive function of evaluating the credibility of witnesses. *Commonwealth v. Pfaff*, 477 Pa. 461, 384 A.2d 1179 (1978), *Commonwealth v. Grosso*, 274 Pa.Super. 370, 418 A.2d 452 (1980). *Commonwealth v. Kuebler*, 484 Pa. 358, 399 A.2d 116 (1979).

Our Supreme Court noted in *Commonwealth v. Kuebler*, supra, that " 'Prosecutorial misconduct in argument is a matter of special concern because of the possibility that the jury will give special weight to the prosecutor's argument.' " 482 Pa. at 363–364, 399 A.2d at 118–119, quoting American Bar Association Standard Relating to the Prosecution Function, § 5.8 Commentary (approved draft, 1971). It is true that the prosecutor must walk a fine line in addressing the jury with his argument. On the one hand he must rigorously clarify the inconsistencies and contradictions throughout the testimony but on the other hand, he must leave the final conclusions to the trier of fact. Unfortunately, in the case at bar the prosecutor crossed the line of permissible argument and entered the sole domain of the jury. This he is forbidden to do.

The prosecutor must exert restraint in voicing his own personal conclusion about which versions of the facts should be accepted as the most viable. Only by doing so will the jury's determination of guilt be:

"... rationally compelled after a disinterested, impartial, and fair assessment of the testimony that has been presented." *Commonwealth v. Gilman*, 470 Pa. 179, 189, 368 A.2d 253, 258 (1977).

In light of the prejudicial nature of the District Attorney's comments, the only appropriate relief is the granting of a new trial. I therefore support the original disposition of this matter. *Commonwealth v. Bullock*, 266 Pa.Super. 526, 405 A.2d 943 (1979), and I dissent from today's decision.

HOFFMAN, J., joins in this dissenting opinion.