456 A.2d 179

**COMMONWEALTH of Pennsylvania**

**v.**

**Michael PINDER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 2, 1982.

Filed Jan. 28, 1983.

Order of Remand Vacated Nov. 16, 1983.

58

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Alan Sacks, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

.

Before WIEAND, BECK and HOFFMAN, JJ.

WIEAND, Judge:

Michael Pinder was convicted by a jury of burglary, four counts of robbery, aggravated assault, terroristic threats and unlawful restraint, three counts of rape and involuntary deviate sexual intercourse, and one count of possessing an instrument of crime. After post-verdict motions had been denied, Pinder was sentenced to a lengthy term of imprisonment. On direct appeal, he contends that numerous trial errors combined with prosecutorial misconduct to deprive him of a fair trial. He also contends that he was sentenced in violation of double jeopardy considerations. We will consider these issues seriatim.

During the early morning hours of June 28, 1978, Augusta Monroe, age 62, was awakened by her daughter, Louella, who discovered that a window in their apartment had been opened by a person unknown. When she went outside to investigate, Mrs. Monroe encountered her neighbor, Margarita Hamlin. When both entered the Monroe home, they found a black man holding a gun on Louella and Cheryl Walson, a guest in the Monroe home. He ordered the women into a bedroom, demanded money, emptied several bureaus. Unable to find more than fifteen dollars, he raped three of the women and forced them to engage in deviate sexual acts. Two of the women were forced to engage in deviate sexual acts with one another, and one was injured so badly as to require a hysterectomy because the rapist forcefully pushed his hand into her vagina. During the hour long ordeal only the elderly Mrs. Monroe was spared from the intruder's vicious sexual assaults.

All victims gave a detailed description of their attacker to the police. He was approximately 5' 11" in height, weighed 200 pounds, was in his 20's, wore a mustache and closely cropped hair, and had a broken tooth. His clothes included a red and white striped shirt, black knee length, cut-off trousers, a black zippered jacket, sneakers and sunglasses. From the victims' description, a composite sketch was

drawn. Appellant, Michael Pinder, was subsequently identified and arrested. When arrested, appellant was at home, clad only in a bathrobe. Police escorted him to his bedroom to dress, where he selected a red and white striped shirt, black knee length cut-off trousers, sneakers, and a black jacket. All four victims identified appellant at a subsequent line-up.

■ Appellant's first argument is that he was prejudiced by remarks made during trial by the trial judge. We examine only two. The remainder of the remarks complained of by appellant were made at side-bar and were not communicated to the jury. Such remarks cannot be said to be prejudicial. *Commonwealth v. Whitson*, 461 Pa. 101, 107, 334 A.2d 653, 655–56 (1975); *Commonwealth v. Krasner*, 285 Pa.Super. 389, 413 n. 13, 427 A.2d 1169, 1181 n. 13 (1981).

The first comment made in the presence of the jury came after defense counsel, in the words of the trial judge, had "petulantly demanded" that he be provided with a transcribed copy of a witness's earlier testimony for purposes of cross-examination. After it had been determined that counsel had previously been given a copy of the notes, the following occurred:

THE COURT: Was the defendant provided notes of all these?

[DEFENSE COUNSEL]: Yes, Your Honor. It's my fault. I didn't bring my copy over.

THE COURT: You can't make a grandstand in the presence of the jury, then. You were provided with notes
. . . .

The second instance occurred after defense counsel had reacted to a witness's response by dramatically throwing up his hands and exclaiming, "Oh!" The court struck the comment and instructed counsel to refrain from making gestures and comments.

■ These two judicial remarks by the trial judge were isolated incidents in a lengthy trial. See, e.g., *Common-*

*wealth v. Ferguson,* 289 Pa.Super. 163, 170–71, 432 A.2d 1103, 1106 (1981); *Commonwealth v. Mayo,* 272 Pa.Super. 115, 120, 414 A.2d 696, 699 (1979). Contrary to appellant's allegation, the record does not show that the court ever displayed a hostile attitude toward the defense. Indeed, the trial judge demonstrated commendable restraint during a trial in which he was required to deal constantly with hostile and defiant tactics by defense counsel. The few mild reprimands given by the court, if possibly they evidenced annoyance with counsel, did not demonstrate hostility toward the defendant. See: *Commonwealth v. Humphreys,* 267 Pa.Super. 318, 331, 406 A.2d 1060, 1066–67 (1979); *Commonwealth v. Frank,* 263 Pa.Super. 452, 473, 398 A.2d 663, 673 (1979). "Counsel may properly be admonished on such occasions without nullifying the entire trial as long as the trial judge does not display partiality or prejudice by his conduct, manner of speech, or choice of language." *Commonwealth v. Frank, supra,* 263 Pa.Super. at 473, 398 A.2d at 674, citing *Commonwealth v. Phillips,* 183 Pa.Super. 377, 384–85, 132 A.2d 733, 737 (1957). Moreover, it is axiomatic that:

> '[e]very unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial. *A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.'* (citations omitted)

*Commonwealth v. Goosby,* 450 Pa. 609, 611, 301 A.2d 673, 674 (1973). The record shows that appellant was not prejudiced, was not deprived of a fair trial, and is not entitled to another trial.

Appellant's next argument is novel. Barbara Kauffman, a third year law student certified as a legal intern pursuant to Pennsylvania Bar Admission Rules 321 and 322, had assisted the Philadelphia Defenders' Association in the preparation of appellant's case for trial. During the first

four days of trial she had been permitted by the court to sit in the gallery from where she took notes. She was also permitted to attend side-bar conferences and confer freely with defense counsel. On the fifth day of trial the court denied a defense request that Ms. Kauffman be permitted to sit at counsel table. Appellant contends that he was thereby deprived of his right to be represented by effective counsel.

■ His contention must fail; he was not denied representation by counsel. Appellant was represented by counsel during the entire trial, and he does not contend that counsel was ineffective. Ms. Kauffman had not been admitted to the bar, and her participation in the trial was circumscribed by limitations contained in Pa.B.A.R. 322. The extent of her active participation in the trial, moreover, was subject to the rule that the general conduct of a trial is committed to the broad discretion of the trial judge. *Commonwealth v. Warner,* 209 Pa.Super. 215, 225 A.2d 98 (1966), *cert. denied,* 389 U.S. 986, 88 S.Ct. 477, 19 L.Ed.2d 479 (1967). The placing of reasonable limitations on the participation of persons other than primary counsel is not an abuse of the trial court's discretion. Thus, in *Commonwealth v. Bachert,* 271 Pa.Super. 72, 412 A.2d 580 (1979), *rev'd* on other grounds, 499 Pa. 398, 453 A.2d 931 (1982), we held that it was not an abuse of discretion to limit the right to examine witnesses and make objections to chief counsel for each side. Moreover, in the instant case, appellant has not identified any prejudice resulting from the trial court's refusal to allow the legal intern to sit at counsel table.[1]

■ During cross-examination of the victims, defense counsel attempted to use police summaries to show alleged inconsistencies in the victims' trial testimony regarding appellant's appearance on the night of the rape. Where the

1. In several cases where certified law students have served as primary counsel for defendants, claims were made that representation by a student who was not a licensed attorney violated the defendant's right to counsel. See: Annotation, Propriety and Effect of Law Students Acting as Counsel in Court Suit, 3 A.L.R. 4th 358 (1981) and cases cited therein.

witness was able to recall and verify the descriptive statement in the police report, counsel was permitted to cross-examine the witness concerning inconsistencies appearing therein. However, where the witness could not recall making a statement to police or was otherwise unable to verify the accuracy of the police summary, counsel was not permitted to use the police summary as a prior inconsistent statement. There was no error in these rulings.

The police reports were not "statements" of the witnesses. They were summaries prepared by investigating police officers. They were not shown to be verbatim recordings of the victims' accounts and descriptions, and, except where a witness adopted and verified the reported statement during trial, there was no evidence that the victims had read, signed or approved the accuracy of the police summaries. "It would have been unfair to permit impeachment of the witnesses through use of an officer's interpretation of what they had said, not their own earlier recollections." *Commonwealth v. Hill,* 267 Pa.Super. 264, 270, 406 A.2d 796, 799 (1979). At no time did appellant's counsel attempt to prove by proper means that the witnesses had made prior inconsistent statements or lay the groundwork for the admission of statements made to the police.

The scope and manner of cross-examination are within the discretion of the trial judge. *Commonwealth v. Sisco,* 484 Pa. 85, 88, 398 A.2d 955, 957 (1979). This is true also regarding the procedure employed for impeaching a witness by confronting him with prior inconsistent statements. *Commonwealth v. Thomas,* 284 Pa.Super. 375, 384, 425 A.2d 1151, 1155 (1981). We have examined carefully the record in this case but find no abuse of discretion in the trial judge's rulings on defense counsel's attempts to discredit the testimony of the victims.

Appellant also contends that the fairness of his trial was destroyed by the trial court's ruling which disallowed the recording of side-bar conferences. However, side-bar conferences, like opening statements and closing arguments, need not be recorded. It is only necessary that

counsel be permitted to place on the record all objections and the court's rulings thereon. Lengthy arguments on objections need not be recorded or transcribed. *Commonwealth v. Russell*, 459 Pa. 1, 11, 326 A.2d 303, 307–08 (1974); *Commonwealth v. Musser*, 172 Pa.Super. 44, 47–48, 92 A.2d 270, 271 (1952). Appellant was not harmed by the court's refusal to allow the recording of full arguments delivered during side-bar conferences. He was permitted in all instances to place on the record his objections, the reasons in support of such objections and the factual basis, if any, necessary to preserve for post-verdict and appellate review the rulings of the court.

■ Appellant also contends that the Commonwealth's attorney committed prosecutorial misconduct by injecting her personal opinion into closing argument, by suggesting that a defense witness was lying, and by appealing to the sympathies of the jurors. The first instance occurred while counsel was discussing the composite sketch prepared by a police artist. She said:

MRS. CLARK [ASSISTANT DISTRICT ATTORNEY]: Ladies and Gentlemen: I submit to you that this doesn't just look like the defendant. It doesn't just have a resemblance to the defendant. Ladies and gentlemen, I submit to you that that is the defendant.

MR. GLOVIN [DEFENSE COUNSEL]: Objection.

THE COURT: All right. Please do not strike the table.

MRS. CLARK: Yes, Your Honor.

Ladies and Gentlemen: I submit to you that Officer Pulcinella couldn't have drawn this any better if he had traced the defendant's photograph. Officer Pulcinella couldn't have done any better if the defendant was sitting right in front of him posing.

MR. GLOVIN: Objection.

THE COURT: All right. Ladies and gentlemen: it is for you to make that determination. You must not take the opinion of the district attorney.

In reviewing the testimony of defense alibi witnesses, in particular that of appellant's girlfriend who testified as to appellant's whereabouts on the morning of the incident, the District Attorney said:

> MRS. CLARK: Now, ladies and gentlemen, in light of all this, the defense presented three witnesses in an attempt to establish an alibi....
>
> Well, ladies and gentlemen, it appears that when [appellant's girlfriend] later discovered, from whatever source, that maybe that 7:30 time might not help her beloved and might even hurt her beloved, what did she do? Ladies and gentlemen, she nonchalantly, without regard to her oath, she took that stand—
>
> MR. GLOVIN: Objection, sir.
>
> THE COURT: All right. The jury is requested to disregard that last remark. ·  .
>
> MRS. CLARK: Ladies and Gentlemen, why would she deliberately change her story?
>
> MR. GLOVIN: Objection.
>
> THE COURT: I think it's a rhetorical question.
>
> MRS. CLARK: I submit, ladies and gentlemen, it's because she's in love. I urge you to dismiss her testimony as untruthful. But forgive her, ladies and gentlemen—
>
> MR. GLOVIN: Objection, Your Honor. .
>
> THE COURT: All right. Well, the jury has a function, and I will explain the function to the jury. That will be the sole function.
>
> MRS. CLARK: I submit that she knows not what she does in the name of love.

Finally, the prosecutor summarized her argument as follows:

> MRS. CLARK: Ladies and gentlemen, I urge you to harken to what I submit is overwhelming evidence, not just sufficient, but overwhelming evidence. And I urge you, ladies and gentlemen, to do that, because I submit

that if you do, you will reach the inescapable conclusion that Michael Pinder is guilty. You will reach the inescapable conclusion, I submit, that justice demands a guilty verdict.

MR. GLOVIN: Objection.

THE COURT: All right. The demands of justice is the process of the jury.

MRS. CLARK: Ladies and gentlemen, the only way, I submit, that you can find this man not guilty is to close your eyes, close your ears, and turn your back to the testimony of these four women and to the abundance of evidence that we have presented.

MR. GLOVIN: Objection. Respectfully, an objection, sir.

THE COURT: Overruled. It's within the purview. The opinions expressed by counsel, as I will tell the jury, are not binding upon the jurors.

.    .    .    .    .

MRS. CLARK: In closing, ladies and gentlemen, let me remind you of a tragic irony in this case. As the victims prematurely sighed with relief in the kitchen, as they were replacing the items on the windowsill, do you recall what Louella Monroe said? She said, "Thank God we escaped something horrible here today." Well, ladies and gentlemen, I urge you to let these women in spite of it all—let them now stand up and say, "Well, thank God justice has been done."

MR. GLOVIN: Objection.

THE COURT: I think justice has been done regardless of the jury's verdict.

■   When we review the closing arguments of prosecutors, we are guided by the ABA Standards Relating to the Prosecution Function. Those standards include the following guidelines: "(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw. (b) It is unprofessional conduct for the prosecutor to

express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. (c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury. (d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict." ABA Standards Relating to the Prosecution Function, Section 5.8. See generally: *Commonwealth v. Starks,* 479 Pa. 51, 387 A.2d 829 (1978); *Commonwealth v. Joyner,* 469 Pa. 333, 365 A.2d 1233 (1976); *Commonwealth v. Cronin,* 464 Pa. 138, 346 A.2d 59 (1975); *Commonwealth v. Baranyai,* 296 Pa.Super. 342, 442 A.2d 800 (1982). Not every intemperate or improper remark by a prosecutor requires a new trial. *Commonwealth v. Jarvis,* 482 Pa. 598, 605, 394 A.2d 483, 487 (1978); *Commonwealth v. Perkins,* 473 Pa. 116, 133–34, 373 A.2d 1076, 1085 (1977); *Commonwealth v. Baranyai, supra* 296 Pa.Super. at 348, 442 A.2d at 803. Only when the remarks are such that their "unavoidable effect ... would be to prejudice the jury, forming in their minds fixed bias and hostility that they could not weigh the evidence and render a true verdict is a new trial required." *Commonwealth v. Baranyai, supra,* 296 Pa.Super. at 347, 442 A.2d at 802, citing *Commonwealth v. Mikesell,* 475 Pa. 589, 595, 381 A.2d 430, 433 (1977); *Commonwealth v. Stoltzfus,* 462 Pa. 43, 61, 337 A.2d 873, 882 (1975); *Commonwealth v. Simon,* 432 Pa. 386, 394, 248 A.2d 289, 292 (1968); *Commonwealth v. Youngkin,* 285 Pa.Super. 417, 430, 427 A.2d 1356, 1362 (1981).

In the instant case, the remarks of the assistant district attorney did not have such an unavoidably prejudicial effect. Usually, the cited remarks were prefaced with the words "I submit." This was merely an argument, an invitation to the jury to so find. See: *Commonwealth v. Woods,* 275 Pa.Super. 392, 405, 418 A.2d 1346, 1352–53

(1980); *Commonwealth v. Martin,* 273 Pa.Super. 88, 92, 416 A.2d 1102, 1104 (1979). Comment may properly be made upon the motive of an alibi witness for testifying. See: *Commonwealth v. Van Cliff,* 483 Pa. 576, 586, 397 A.2d 1173, 1178 (1979); *Commonwealth v. Gunderman,* 268 Pa.Super. 142, 148, 407 A.2d 870, 873 (1979). Moreover, a prosecutor is free to argue that the facts and reasonable inferences to be drawn therefrom are sufficient evidence to support a guilty verdict. See: *Commonwealth v. Smith,* 490 Pa. 380, 388, 416 A.2d 986, 989 (1980); *Commonwealth v. Stevens,* 276 Pa.Super. 428, 432–33, 419 A.2d 533, 535 (1980); *Commonwealth v. Smith,* 273 Pa.Super. 441, 445, 417 A.2d 729, 731–32 (1979); *Commonwealth v. Gunderman, supra* 268 Pa.Super. at 148, 407 A.2d at 873. The prosecutor may also argue, according to the facts presented, that a guilty verdict would be a fair and just result. See: *Commonwealth v. Burton,* 491 Pa. 13, 23, 417 A.2d 611, 615 (1980); *Commonwealth v. Smith, supra* 490 Pa. at 388, 416 A.2d at 990; *Commonwealth v. Parente,* 294 Pa.Super. 446, 452, 440 A.2d 549, 553 (1982); *Commonwealth v. Bullock,* 284 Pa.Super. 601, 611, 426 A.2d 657, 662 (1981).

The remarks of the prosecutor in the instant case were not only proper, but the slightest danger of prejudice was overcome by the repeated cautionary remarks of the trial judge. Repeatedly, he cautioned that the jury was not to be guided by the opinions of counsel, if any, and that it was the function of the jury to determine the facts. See: *Commonwealth v. Taliaferro,* 273 Pa.Super. 151, 156, 417 A.2d 213, 215–16 (1979); *Commonwealth v. Middleton,* 269 Pa.Super. 17, 24, 409 A.2d 41, 44 (1979); *Commonwealth v. Johnston,* 258 Pa.Super. 429, 438, 392 A.2d 869, 873 (1978).

Clearly in the instant case there was nothing in the prosecutor's closing argument that unfairly prejudiced the defendant so as to require that his convictions be overturned.

Finally, appellant argues for the first time on appeal that principles of double jeopardy and the alleged rule that a

recorded judgment of sentence controls where there is a discrepancy between the recorded sentence and the sentence orally pronounced require this Court to remove a discrepancy appearing in this case by directing prison authorities to record appellant's sentences as they appear in the written judgments of sentence. Prison authorities have recorded appellant's sentences as being for not less than 38 nor more than 82 years. Appellant concedes that this is consistent with sentences imposed in open court and contained in the official record for the 24 convictions. The record reflects that the sentencing judge, in order that there be no mistake about his intent, told appellant and all who were present at the sentencing on four separate occasions that he intended to impose a total sentence of 38 to 82 years.[2] However, the sentences recorded by the clerk and

**2.** Before imposing sentence, the court said:

> I will consider that each one of the crimes is separate and distinct. I will consider the others peripheral and ancillary crimes that go with the commission of a crime, such as terroristic threats and maybe assaults as ancillary to the principal crimes. The principal crimes here, though, are robberies, four robberies, three rapes, three involuntary deviate sexual intercourses, and one burglary, plus the use of a weapon, which I will also recognize in my sentence.
>
> For the four robberies—and before I impose them specifically on each Bill, it is the intention of the Court to sentence the defendant for the four robberies to 10 to 20 years on each one of them, and I will let those robberies run *concurrently* with one another. I will also impose a sentence on the three rapes, the maximum sentence I will impose on the three rapes, 10 to 20. The rape charges of rape sentences will run *concurrently* with one another but *consecutive* to the robbery charges.
>
> There are three involuntary deviate sexual intercourses. I will impose a sentence on each of those of 10 to 20, and they will run *consecutive* to the sentence that I have imposed on robbery and on the three rapes.
>
> I will impose a sentence on burglary of 7 to 20, and I will direct that that be served *consecutively* to the other sentence that I have imposed.
>
> On the use of the weapon I will sentence the defendant from 1 to 2 years, and that sentence also will run *consecutively* to the others.
>
> So I have in my computation *38 to 82.* Is my computation correct?
>
> [ASSISTANT DISTRICT ATTORNEY]: Yes.
> [DEFENSE COUNSEL]: Yes. (Emphasis added.)

signed by the sentencing judge failed in several instances to contain the judge's intent concerning the consecutive nature thereof. Thus, when the sentences recorded on the several informations are totalled in accordance with the mandate of Pa.R.Crim.P. 1406,[3] the total time to be served is not less than 20 nor more than 40 years.

Whether the recorded lesser total sentence was a clerical error, as it appears to be, or whether the sentencing judge intended to modify appellant's sentences after they had been·imposed has never been considered or clarified by the trial court. Appellant has not moved in accordance with Pa.R.Crim.P. 1410 to modify the sentence, and there has never been a request for clarification in the court which imposed the sentence.

Appellant urges on appeal that we direct his sentence to be recorded by the prison authorities as 20 to 40 years. In support of his request, he relies on decisions in *Commonwealth v. Hosendorf,* 437 Pa. 219, 263 A.2d 439 (1970) and *Commonwealth ex rel. Woods v. Howard,* 249 Pa.Super. 428, 378 A.2d 370 (1977), which held that in cases of conflict between the pronouncements of the court at sentencing and the signed sentencing order contained on the information, the signed sentencing order must prevail. In *Hosendorf,*

> The court then rendered sentence, reading through each of 24 charges (charges of trespass, indecent assault, and firearms offenses had been nol prossed) and imposing sentence thereon, consistent with his statement of intent. Summarizing his sentence, the court repeated the aggregate three times:
>> The aggregate sentence is repreated [sic]. That's 38 minimum and 82 maximum.
>
>> . . . . .
>
>> Our ultimate sentence here aggregates to 38 minimum, 82 maximum.
>
>> . . . . .
>
>> I have just imposed a sentence upon you aggregating no less than 38 years, no more than 82.

**3.** Pa.R.Crim.P. 1406 provides as follows:
> (a) Whenever more than one sentence is imposed at the same time on a defendant, or whenever a sentence is imposed on a defendant who is incarcerated for another offense, such sentences shall be deemed to run concurrently *unless the judge states otherwise.* (Emphasis added.)

however, the trial judge had died following the sentencing, and the Supreme Court was unable to know which of the two sentences the judge had intended to impose. See: *Commonwealth v. Phillips,* 273 Pa.Super. 321, 328–29, 417 A.2d 669, 673 (1979) (Opinion by Roberts, J., Specially Presiding). And in *Woods,* the conflict arose in separate habeas corpus proceedings and, as Judge Hoffman, the opinion writer, observed: "We may only consider the written order signed by the sentencing judge and may not review his oral pronouncements at the time of sentencing."

■ In the instant case, the entire record is before us, including the pronouncements of the judge at the time of sentencing, and that record discloses a need to clarify the intent of the sentencing judge. Moreover, there is no impediment to such clarification. The sentencing judge continues to be an active trial judge in Philadelphia, and he, better than this court, can clarify the sentence which he imposed. So long as he does not impose a harsher sentence than that originally imposed, clarification is not precluded by double jeopardy considerations. *Commonwealth v. Phillips, supra,* 273 Pa.Super. at 328, 417 A.2d at 673.

Although our review discloses no trial error, the ambiguity existing in conflicting sentencing pronouncements requires that we remand for clarification of the sentences imposed. Jurisdiction will not be retained.

It is so ordered.

HOFFMAN, J., files a concurring and dissenting opinion.

HOFFMAN, Judge, concurring and dissenting:

I concur in the affirmance of appellant's convictions, but must dissent from the remand to the lower court to reconsider and "clarify" the signed judgment of sentence.

The lower court in its oral colloquy pronounced a series of consecutive sentences totalling 38 to 82 years. It then

signed a more lenient judgment of sentence omitting mention of the consecutive nature of certain sentences and thereby totalling 20 to 40 years. *See* Pa.R.Crim.P. 1406. The prison authorities recorded appellant's sentence on his "Initial Sentence Status Report," as 38 to 82 years. Appellant challenges the prison authorities' recording of his sentence.

This Court should not *sua sponte* attempt to resolve the discrepancy between the orally pronounced and the signed sentence. The lower court had the power in promulgating the signed judgment of sentence to impose without further explanation a sentence more lenient than that announced in open court. *Commonwealth v. Silverman*, 442 Pa. 211, 275 A.2d 308 (1971), *citing United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931) (inherent power to mitigate). *See* 42 Pa.C.S.A. § 5505, 9721; Pa.R.Crim.P. 1410; *Commonwealth v. Evans*, 299 Pa.Superior Ct. 529, 445 A.2d 1255 (1982). Generally, the signed sentencing order, if legal, controls over oral statements of the sentencing judge not incorporated into the signed judgment of sentence. *E.g. Commonwealth v. Hodge*, 246 Pa.Superior Ct. 71, 369 A.2d 815 (1977); *Commonwealth v. Foster*, 229 Pa.Superior Ct. 269, 324 A.2d 538 (1974). If the signed order is inaccurate, the party aggrieved may timely petition to modify it so that it may be corrected. *See* Pa.R.Crim.P. 1410; *Commonwealth v. Anderson*, 304 Pa.Superior Ct. 476, 450 A.2d 1011 (1982); *Commonwealth ex rel. Woods v. Howard*, 249 Pa.Superior Ct. 428, 378 A.2d 370 (1977), *citing Hill v. United States ex rel. Wampler*, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283 (1936) (CARDOZO, J.). The lower court also has limited rights to *sua sponte* correct formal or substantial errors in the sentencing order. *See* 42 Pa.C.S.A. § 5505; Pa.R.A.P. 1701; Pa.R.Crim.P. 1410; *Commonwealth v. Cole*, 437 Pa. 288, 263 A.2d 339 (1970). Here, the lower court did not choose to change or correct its more lenient signed sentencing order, and the Commonwealth, aggrieved by that order, chose not to petition for its

modification. We should not intervene where the lower court acted in a matter within its discretion and the aggrieved party has not complained.

Appellant's challenge to the prison authorities' recording of sentence does not place before this Court the issue, addressed by the majority, of the discrepancy between the signed judgment of sentence and the oral colloquy. Rather, appellant's contention is essentially the same as that in *Commonwealth ex rel. Woods v. Howard, supra.* There a lower court announced a series of consecutive sentences at the oral colloquy, but signed a judgment of sentence omitting mention of their consecutive nature, thus reducing them to concurrent terms. The prison authorities, however, attempted to hold Woods beyond the concurrent terms. Woods challenged the prison authorities' action by a *habeas corpus* petition and obtained relief in our Court. 249 Pa.Superior Ct. 428, 378 A.2d 370 (1977). Here, appellant challenges not the prison authorities attempt to hold him, but their recording of his sentence on the "Initial Sentence Status Report." The bottom of that form declares in boldface type, "Please check this report carefully. If you have any questions or corrections, see your Records Officer." We have no indication on this record that appellant contacted his records officer or otherwise pursued or exhausted his administrative remedies. To conserve judicial resources and to prevent the circumventing of appropriate lower authorities, an appellate court will not review matters that have not been addressed to those lower authorities. *See, e.g., Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). Accordingly, we should deny appellant's request that we order correction of the prison authorities' records, without prejudice to his right subsequently to pursue his contentions in the appropriate forum.