469 A.2d 162

**COMMONWEALTH of Pennsylvania**

v.

**David Paul CASE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 9, 1980.

Filed Oct. 28, 1983.

Reargument Denied Jan. 13, 1984.

Petition for Allowance of Appeal Granted May 21, 1984.

David B. Keeffe, Wellsboro, for appellant.

Rudolph Van der Heil, Assistant District Attorney, Wellsboro, for Commonwealth, appellee.

Before CERCONE, President Judge, and WICKERSHAM and LIPEZ, JJ.

26

WICKERSHAM, Judge:

This case comes to us as appellant David Paul Cases's challenge to his conviction on three counts of receiving stolen property. Case was arrested as a result of a police investigation into burglaries in Wellsboro, Pennsylvania. An omnibus pre-trial motion was filed on Case's behalf seeking to suppress statements Case made to the police shortly after his arrest. The motion was denied and the matter proceeded to trial before President Judge Robert M. Kemp and a jury. After Case's conviction, his post-trial motions were denied; Case was sentenced to pay a fine and serve a term of imprisonment. This appeal timely followed.

The evidence presented at trial showed that on April 29, 1978, the Western Auto store in Wellsboro was broken into and several pistols were stolen. In mid May 1978, the J.E. Clark sporting goods store was also burglarized. The Clark store lost guns and knives to the burglars. Police investigation of these incidents led to the filing of burglary charges against several juveniles. The juveniles told the police that they gave many stolen items to Case in exchange for marijuana.

A warrant then issued for Case's arrest, which was effected by a constable and an Officer Slavadge of the Wellsboro Police Department. At the time of his arrest Case stated that he wanted to speak to a lawyer. Officer Salvadge took Case to the Wellsboro Police Station and there advised Case of his *Miranda* rights.

Case refused to waive his *Miranda* rights or make a statement. While being fingerprinted in the county jail Case indicated to Officer Salvadge that he would make a statement if he received a deal. In the presence of another police officer Salvadge repeated Case's *Miranda* rights. Case stated that he knew where the guns were and would return the guns if he got a deal. The police said they had no authority to make a deal and even had an assistant

district attorney explain to Case that a deal could only be struck if Case had an attorney.

Case's first issue is:

Did the trial court err in failing to grant the defendant's motion to suppress the defendant's incriminatory statement made at the jail house?

Brief for Appellant at 1.

Case argues that his request at the time of his arrest for a lawyer precluded the police from asking him if he wished to make a statement. Further, Case contends that he never expressly waived his *Miranda* rights.

■ The decision of the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), stands for the proposition that before custodial interrogation a person must be informed of his right to remain silent and his right to counsel. Both of these rights are, however, subject to waiver. A person questioned by the police can make a voluntary, knowing and intelligent waiver of his rights: nothing in *Miranda* prevents a suspect from making a voluntary confession.

In this case it is clear that Case's *Miranda* rights were not violated. Case indicated that he wanted a lawyer when he was arrested, nevertheless, a police officer explained Case's *Miranda* rights. The police asked Case if he wished to give a statement but Case in fact relied on his right to remain silent. The police officer dropped the matter and began fingerprinting Case for booking. It was during this procedure, a normal part of arrest and custody, that Case first said he wished to make a statement. In response to Case, the police officer stated that he could not negotiate a deal and repeated Case's *Miranda* rights, yet Case made a statement.

■ *Miranda* proscribes custodial interrogation unless the suspect's lawyer is present to protect his rights. Here, Case's statement was not a product of police interrogation. The police properly gave Case his *Miranda* rights, asked if he wished to speak and did not pursue the matter when

Case stood silent but rather turned to the routine task of fingerprinting the suspect. It was Case himself who broached the topic of making a statement. When Case did so, the police officer properly told Case he had no authority to make a deal and again gave Case his *Miranda* rights. Case's statement was not given in violation of his constitutional right to remain silent or his right to counsel.

■ Case's second issue is:

Did the trial court err in prohibiting the defense counsel during trial from cross-examining the juvenile witnesses concerning their mutual involvement in burglaries a month before the crimes for which the defendant was on trial?

Appellant next argues that the trial court erred when it refused to permit appellant to cross-examine the prosecution's juvenile witnesses regarding portions of their juvenile records, thus denying appellant his Sixth Amendment right to confront the witnesses against him. These witnesses, prior to appellant's trial, had all been adjudged delinquent for committing various burglaries and thefts. The evidence regarding the juveniles' participation in two of these burglaries, to wit: at a Western Auto Store and at Clark's Sporting Goods Store, was introduced at trial because it was alleged that the juveniles sold the stolen items to appellant. Defense counsel, however, also sought to introduce evidence of the participation of the juveniles in a prior robbery at Harry's Convenient Mart and in the theft of batteries from a truck belonging to the U.S. Department of Soil and Conservation.

In *Commonwealth v. Katchmer*, 453 Pa. 461, 309 A.2d 591 (1973), our supreme court held that the trial court committed reversible error in permitting the prosecution to cross-examine the defendant's alibi witnesses concerning their prior juvenile offenses. The one witness had admitted to shoplifting at age sixteen and the other to under-age drinking. Besides noting the absence of elements of *crimen falsi* in under-age drinking, the court wrote that adjudications of delinquency should not be used for im-

peachment purposes in cases such as *Katchmer* because the legislature has explicitly directed that juvenile adjudications do not rise to the level of an adult criminal conviction.[1] The court felt that this was particularly true where, as in *Katchmer*, the outcome of the trial depended entirely upon the resolution of the direct conflict between the testimony of the prosecution's main witness on one hand and that of defendant and his alibi witnesses on the other.

Subsequent to *Katchmer*, the United States Supreme Court handed down its opinion in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in which it held that the trial court's refusal to allow the defendant to cross-examine a key prosecution witness regarding the latter's probationary status following an adjudication of juvenile delinquency denied the defendant his right under the Sixth Amendment to the United States Constitution to confront the witnesses against him,[2] notwithstanding the state's policy protecting the anonymity of juvenile offenders.

The Court said:

*The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness.* The State could have protected [its witness] from exposure of his juvenile adjudication in these circumstances by

---

1. In *Katchmer,* the court relied upon the Juvenile Court Act of 1933, Act of June 2, 1933, P.L. 1433, § 19, 11 P.S. § 261. This act was repealed by the Act of December 6, 1972, P.L. 1464, No. 333, § 337, 11 P.S. § 50–337, and substantially re-enacted by the Juvenile Act of 1972, Act of December 6, 1972, P.L. 1464, No. 333, § 27, 11 P.S. § 50–324. This latter section has since been repealed but was substantially re-enacted by the Juvenile Act of 1976, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 6354(b) (1982).

2. The Sixth Amendment was held to be binding upon the states through the Fourteenth Amendment by the United States Supreme Court's decisions in *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), and *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records.

*Id.* at 320, 94 S.Ct. at 1112 (emphasis added).

Several years after *Davis,* our supreme court was again called upon to decide a case dealing with impeachment by use of juvenile records. In *Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453 (1978), the court reconciled the *Katchmer* decision with that of *Davis.* The court pointed out that in *Katchmer,* reversible error was found in permitting *the prosecution* to cross-examine defense alibi witnesses concerning prior juvenile offenses. For this reason, there was no conflict between that case and *Davis,* where the focus was upon the constitutional right of *a defendant* to cross-examine the witnesses against him. The facts in *Slaughter* were found to be more akin to those in *Davis* than in *Katchmer,* for in *Slaughter,* the defense had sought to obtain a copy of a prosecution witness's juvenile record, if such a record existed. The defense's request was denied by the trial court on the grounds that juvenile records are inadmissible. On appeal, the court reversed and remanded with instructions, saying:

> ... that appellant, through his counsel, be given access to Ragland's [the prosecution's witness] juvenile record. Counsel will then be able to argue to the trial court what, if any, use could have been made of that record had he been allowed to use it to cross-examine Ragland. If, in the court's opinion, its original refusal to allow defense counsel to cross-examine Ragland on the basis of this juvenile record prevented appellant from presenting to the jury evidence regarding Ragland's possible bias, or other information which would bring the case within the requirements of *Davis, supra,* it shall vacate the judgment of sentence and order a new trial. If, on the other hand, Ragland has no juvenile record, or if in the court's opinion, appellant has failed to assert any facts which

would bring the case within the rationale of *Davis, supra,* it shall affirm its original order.

*Id.,* 482 Pa. at 553, 394 A.2d at 460.

As noted, in *Davis v. Alaska,* the Supreme Court held that the defendant had the right to cross-examine a key prosecution witness concerning the witness's juvenile record and resultant probationary status because it reflected a possible bias, i.e., the witness *might testify so as to please the prosecution since he was under the supervision of the state.* The logical connection between the fact that the witness was on probation, and the inference to be drawn, that the witness might be biased toward the state, is clear and direct.

There is however no logical connection between the facts Case wished to prove and the inference to be drawn from those facts. Case wanted to establish the following facts:

(1) The juvenile witnesses were involved in a robbery at Harry's Convenient Mart; and

(2) the juvenile witnesses stole batteries from a U.S. Soil Conservation Service truck; and

(3) the juvenile witnesses did not implicate Case in these crimes; and

(4) the juvenile witnesses were involved in a burglary at Western Auto; and

(5) the juvenile witnesses were involved in a burglary at Clarks' Sporting Goods; *but*

(6) the juvenile witnesses implicated Case in the burglaries at Western Auto and Clark's Sporting Goods.

From these facts Case wished to argue that the juvenile witnesses accused him to cover up for friends involved in the Western Auto and Clark's Sporting Goods burglaries.

There is no logical connection between the facts and the argument Case wished to present. At most, the facts show that the juvenile witnesses committed some crimes on their own and some crimes at Case's behest. That the juvenile witnesses committed two crimes and did not implicate Case does not demonstrate bias. The juvenile witnesses would

naturally be biased in favor of their friends completely independent of whether the juvenile witnesses had a juvenile record or not. That the juvenile witnesses against Case might be covering-up for their friends does not follow from the unrelated fact that they were involved in two prior crimes.

We hold therefore that the trial judge correctly ruled that the juvenile witnesses' prior delinquency records relating to the robbery at Harry's Convenient Mart and the theft from a U.S. Soil Conservation Service truck were irrelevant to the contention defense counsel advanced.

Judgment of sentence affirmed.

CERCONE, President Judge, filed a concurring and dissenting opinion.

CERCONE, President Judge, concurring and dissenting:

While I agree with the majority's disposition of appellant's *Miranda* issue, I must dissent from the holding of the majority with regard to appellant's impeachment issue.

Appellant argues that the trial court erred when it refused to permit appellant to cross-examine the prosecution's juvenile witnesses regarding portions of their juvenile records, thus denying appellant his Sixth Amendment right to confront the witnesses against him. These witnesses, prior to appellant's trial, had all been adjudged delinquent for committing various burglaries and thefts. The evidence regarding the juveniles' participation in two of these burglaries at Western Auto Store and at Clark's Sporting Goods Store was introduced at trial because it was alleged that the juveniles sold the stolen items to appellant. However, defense counsel also sought to introduce evidence of the juveniles' participation in a prior robbery at Harry's Convenient Mart and in the theft of batteries from a truck belonging to the U.S. Department of Soil and Conservation. Defense counsel's intended use for this evidence was two-fold—an attack on credibility based on crimes involving

*crimen falsi* and a demonstration of bias on the part of the juvenile witnesses. The defense's bias argument was based on the fact that the juveniles were implicating appellant in the two crimes at issue in an attempt to cover up or protect other such culpable juveniles.

In *Commonwealth v. Katchmer*, 453 Pa. 461, 309 A.2d 591 (1973), our Supreme Court held that the trial court committed reversible error in permitting the prosecution to cross-examine the defendant's alibi witnesses concerning their prior juvenile offenses. The one witness had admitted to shoplifting at age sixteen and the other to under age drinking. Besides noting the absence of elements of *crimen falsi* in under age drinking, the Court wrote that adjudications of delinquency should not be used for impeachment purposes in cases such as *Katchmer* because the legislature has explicitedly directed that juvenile adjudications do not rise to the level of an adult criminal conviction.[1] The Court felt that this was particularly true where, as in *Katchmer*, the outcome of the trial depended entirely upon the resolution of the direct conflict between the testimony of the prosecution's main witness on one hand and that of defendant and his alibi witnesses on the other.

Subsequent to *Katchmer*, the United States Supreme Court handed down its opinion in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in which it held that the trial court's refusal to allow the defendant to cross-examine a key prosecution witness regarding the latter's probationary status following an adjudication of juvenile delinquency denied the defendant his right under the Sixth Amendment to the United States Constitution to con-

---

1. In *Katchmer*, the Court relied upon the Juvenile Court Act of 1933, Act of June 2, 1933, P.L. 1433, § 19, 11 P.S. § 261. This act was repealed by the Act of December 6, 1972, P.L. 1464, No. 333, § 337, 11 P.S. § 50–337, and substantially re-enacted by the Juvenile Act of 1972, Act of December 6, 1972, P.L. 1464, No. 333, § 27, 11 P.S. § 50–324. This latter section has since been repealed but was substantially re-enacted by the Juvenile Act of 1976, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 6354(b) (1982).

front the witnesses against him,[2] notwithstanding the state's policy protecting anonymity of juvenile offenders. The Court discussed at length the significance of cross-examination in the context of the Sixth Amendment thusly:

*Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are .tested.* Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit the witness. *One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness.* By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. *A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.* The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).

**2.** The Sixth Amendment was held to be binding upon the states through the Fourteenth Amendment by the United States Supreme Court's decisions in *Douglas v. State of Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), and *Pointer v. State of Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

*Id.* 415 U.S. at 316–317, 94 S.Ct. at 1110. (footnote omitted) (emphasis added).

The Court then made its ruling, saying:

> *The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness.* The State could have protected [its witness] from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records.

*Id.* at 320, 94 S.Ct. at 1112 (emphasis added).

Several years after *Davis,* our Supreme Court was again called upon to decide a case dealing with impeachment by use of juvenile records. In *Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453 (1978), the Court reconciled the *Katchmer* decision with that of *Davis.* The Court pointed out in *Katchmer,* reversible error was found in permitting *the prosecution* to cross-examine defense alibi witnesses concerning prior juvenile offenses. For this reason, the Court found that there was no conflict between that case and *Davis,* where the focus was upon the constitutional right of *a defendant* to cross-examine the witnesses against him. The facts in *Slaughter* were found to be more akin to those in *Davis* than in *Katchmer,* for in *Slaughter,* the defense had sought to obtain a copy of a prosecution witness's juvenile record, if such a record existed. The defense's request was denied by the trial court on the grounds that juvenile records are inadmissible. On appeal, the Court reversed and remanded with instructions, saying:

> . . . that appellant, through his counsel, be given access to Ragland's [the prosecution's witness] juvenile record. Counsel will then be able to argue to the trial court what, if any, use could have been made of that record had he been allowed to use it to cross-examine Ragland. If, in the court's opinion, its original refusal to allow defense

counsel to cross-examine Ragland on the basis of this juvenile record prevented appellant from presenting to the jury evidence regarding Ragland's possible bias, or other information which would bring the case within the requirements of *Davis, supra,* it shall vacate the judgment of sentence and order a new trial. If, on the other hand, Ragland has no juvenile record, or if in the court's opinion, appellant has failed to assert any facts which would bring the case within the rationale of *Davis, supra,* it shall affirm its original order.

*Id.,* 482 Pa. at 553, 394 A.2d at 460.

Turning now to the facts of appellant's case, I would hold that the court erred when it refused to allow the defense to introduce the additional prior criminal acts of the prosecution witnesses. The court's ruling denied appellant the opportunity of arguing to the jury the bias and prejudice of the juvenile witnesses. Furthermore, it cannot be gainsaid that because the jury heard the juveniles admit their participation in the two burglaries and thefts (from Western Auto Store and Clark's Sporting Goods Store), the fruits of which appellant was accused of receiving, that it was harmless error for the court to refuse to allow evidence of the juveniles' involvement in two prior thefts (from Harry's Convenient Mart and the U.S. Department of Soil and Conservation) to be introduced. It could be that although the juveniles were acknowledging their own guilt for the crimes at bar, their admissions actually bolstered their credibility regarding their accusation of appellant because it appeared as if the juveniles had decided to "tell all." This may, indeed, be what they had decided to do, but nonetheless appellant was denied his Sixth Amendment right to impeach juveniles when the court refused to allow appellant to cross-examine the youths regarding their participation in the thefts at Harry's Convenient Mart and the U.S. Department of Soil and Conservation. Accordingly, I would reverse appellant's conviction and remand for a new trial.[3]

---

**3.** I acknowledge that it would seem that the decision which I suggest today would be in conflict with our prior decisions of *Commonwealth*

*v. Dombrauskas,* 274 Pa.Superior Ct. 452, 418 A.2d 493 (1980), and *Commonwealth v. Pilosky,* 239 Pa.Superior Ct. 233, 362 A.2d 253 (1976), where we held that the then effective Juvenile Act of December 6, 1972, P.L. 1464, No. 333, § 27(b), 11 P.S. § 50–324(b) prohibited an accused's use on cross-examination of a witness's prior adjudication for delinquency. (This act has since been repealed and substantially re-enacted. *See* Juvenile Act of 1976, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 6354(b) (1982). Nevertheless, I would find that there is no conflict here since the constitutional question was not addressed in either *Dombrauskas* or *Pilosky.* It is the well-settled rule that issues not raised in the court below are waived and cannot be raised for the first time on appeal; this rule holds true even for issues of a constitutional dimension. *Doner v. Jowitt and Rodgers Co.,* 484 Pa. 496, 399 A.2d 402 (1979); *Policino v. Ehrlich,* 478 Pa. 5, 385 A.2d 968 (1977); *Commonwealth ex rel. Bulson v. Bulson,* 278 Pa.Superior Ct. 6, 419 A.2d 1327 (1980); *Strickler v. United Elevator Co., Inc.,* 257 Pa.Superior Ct. 542, 391 A.2d 614 (1978). Therefore, the constitutional question now raised has not heretofore been decided by this Court.