499 A.2d 1089

**COMMONWEALTH of Pennsylvania**

v.

**Tyrone WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted April 9, 1985.

Filed Oct. 18, 1985.

Richard S. Levine, Assistant Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before WIEAND, JOHNSON and MONTGOMERY, JJ.

JOHNSON, Judge:

Appellant, Tyrone Williams, was convicted following a jury trial of one count of involuntary deviate sexual intercourse and one count of criminal conspiracy and sentenced to serve not less than 7½ nor more than 15 years of imprisonment.

On appeal the following questions are presented to this Court:

    I.  DID PREJUDICIAL COMMENTS MADE BY THE DISTRICT ATTORNEY DEPRIVE THE ACCUSED OF A FAIR AND IMPARTIAL TRIAL AND CONSTITUTE REVERSIBLE ERROR?

    A.  DID PREJUDICIAL COMMENTS MADE BY THE DISTRICT ATTORNEY DURING CLOSING ARGUMENT CONSTITUTE REVERSIBLE ERROR?

    B.  DID PREJUDICIAL COMMENTS MADE BY THE DISTRICT ATTORNEY WHILE DEFENSE COUNSEL WAS CROSS-EXAMINING THE ALLEGED VICTIM CONSTITUTE REVERSIBLE ERROR?

    II.  DID THE TRIAL COURT ERR IN REFUSING TO ALLOW DEFENSE COUNSEL TO CROSS-EXAMINE A CRUCIAL PROSECUTION WITNESS REGARDING HIS ALLEGED RECORD AS A JUVENILE OFFENDER?

For the following reasons we affirm.

The charges against Appellant stem from an alleged jailhouse rape. The victim, who was 18 years old and an

inmate at the Allegheny County Jail, testified that he was anally raped while the Appellant's brother, Lynn Williams, stood guard outside Appellant's cell. Apparently the victim was incarcerated awaiting sentencing following his guilty plea to twelve or thirteen counts of burglary.

Appellant initially argues that the prosecutor, on two separate occasions during closing arguments, made alleged prejudicial comments. Timely objections to both comments were made by defense counsel and requests to the trial court for cautionary instructions were denied. While referring to the first time the Appellant probably saw the victim in jail, the prosecutor commented; "What does [Tyrone Williams] see when [the victim] walks in, ladies and gentlemen? He sees fresh meat, that's what he sees." N.T., 8/13/82 at 156.

While the prosecutor has a duty to fairly present the Commonwealth's case, as we indicated in *Commonwealth v. Connors,* 311 Pa.Super. 553, 563–64, 458 A.2d 190, 195–96 (1983):

> not every intemperate or improper remark by the prosecutor requires a new trial.... Before a new trial is required, the language must be such that its "unavoidable effect ... would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." (Citations omitted).

In reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made. *Commonwealth v. Martin,* 307 Pa.Super. 118, 452 A.2d 1066 (1982).

Defense counsel set the tone for closing arguments when he stated:

> [The victim] was such a shrinking violet, that he didn't say a blessed word. He was so full of fear with his 6'5" friends, Mr. Seachrist living right upstairs, that Tyrone took advantage of him, he squirted some kind of salve or

oil allegedly up his back side and proceeded to pounce on him for a half an hour. What did [the victim] do when it was over? He unfolded his clothes, he put them back on and went to lunch.

N.T., 8/13/82 at 139–40.

■ Following this graphic description of the alleged incident, the prosecutor's reference to the victim as "fresh meat" when viewed in context was not so prejudicial as to require a new trial. *See Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977).

Appellant also contends that the prosecutor's statement "I submit to you, the testimony of [the victim] is the only believable testimony that you heard in this case" (N.T., 8/13/82 at 160) was grounds for reversal. We disagree.

As we recently stated in *Commonwealth v. Pinder*, 310 Pa.Super. 56, 67–68, 456 A.2d 179, 185 (1983):

Only when the [prosecutor's] remarks are such that their "unavoidable effect ... would be to prejudice the jury, forming in their minds fixed bias and hostility that they could not weigh the evidence and render a true verdict is a new trial required".... In [*Pinder*], the remarks of the assistant district attorney did not have such an unavoidably prejudicial effect. Usually, the cited remarks were prefaced with the words "I submit." This was merely an argument, an invitation to the jury to so find.... Moreover, a prosecutor is free to argue that the facts and reasonable inferences to be drawn therefrom are sufficient evidence to support a guilty verdict. (Citations omitted).

Furthermore, counsel for co-defendant Lynn Williams had already inspired such a comment in his closing argument when he stated, "Mr. Kelly's going to tell you that he doesn't believe [the victim], Mr. Krastek's going to tell you he doesn't believe Tyrone Williams." N.T., 8/13/82 at 136.

■ The trial judge is in the best position to monitor the propriety of remarks of counsel during closing argument and:

the appellate courts must be more than hesitant to disturb a determination of the trial court regarding propriety since the quiet, studied solemnity of the appellate court is a world apart from the charged atmosphere of the trial courtroom.

*Commonwealth v. Williams*, 295 Pa.Super. 369, 378, 441 A.2d 1277, 1282 (1982). We find in the instant case that the trial judge did not abuse his discretion by refusing to grant a mistrial.

■ Appellant's next argument concerns alleged prejudicial comments made by the prosecutor during cross-examination of the victim. The defense counsel sought to cross-examine the victim concerning the victim's guilty plea to thirteen counts of burglary when the prosecutor objected and made the following statement in the presence of the jury: "It's my understanding they're not allowed to ask this victim. I'm not allowed to ask the defendant." N.T., 8/12/82 at 36. Appellant argues that the prosecutor's comment led the jury to believe that Appellant had engaged in prior criminal activity. We find that, in light of the circumstances in the instant case, this comment by the prosecutor was not improper. The jury was well aware that both the victim and the Appellant were inmates at the Allegheny County Jail. Nothing new was revealed to the jury about Appellant's criminal background by the prosecutor's statement.

It is suggested by Appellant that a remand for a new trial is necessary because the trial court refused to permit defense counsel, on cross-examination of the victim, to inquire into his plea of guilty to twelve or thirteen counts of burglary where the victim had not yet been sentenced on those counts. This argument has no merit.

In *Commonwealth v. Finkelstein*, 191 Pa.Super. 328, 156 A.2d 888 (1959) this Court affirmed the trial court's refusal to permit defense counsel to question a prosecution witness about his guilty plea to three burglary charges where the witness had not yet been sentenced. The Court in *Finkelstein* explained:

Although it is proper to cross-examine concerning specific convictions of crimes affecting the credibility of the witness, the crimes must be those for which a sentence has been imposed. In *Commonwealth v. Palarino*, 168 Pa. Super. 152, 156, 77 A.2d 665, 667 [(1951)], it was said: "With respect to impeachment of witnesses by records of previous convictions, it has been decided that 'conviction' must be given its strict technical meaning. Neither a verdict nor a plea will, without more, suffice...."

*Id.*, 191 Pa.Superior Ct. at 333–34, 156 A.2d at 892.

We now turn to Appellant's argument that the trial court erred in refusing to allow defense counsel to cross-examine the victim regarding his alleged record as a juvenile offender.

At a side bar conference after the trial court had refused to permit inquiry into the twelve or thirteen burglary counts for which the victim was awaiting sentencing, defense counsel stated:

At this time we want his juvenile record to see whether or not he has been convicted of crimen falsi other than these 12 burglaries.

N.T., 8/12/82 at 46. This request was also denied by the trial court.

The argument advanced before the trial court, but abandoned on appeal, has no merit since an adjudication of delinquency does not constitute a criminal conviction and, therefore, cannot be used for *crimen falsi* impeachment of witnesses. *Commonwealth v. Katchmer*, 453 Pa. 461, 309 A.2d 591 (1973); *Commonwealth v. Case*, 322 Pa.Super. 24, 469 A.2d 162 (1983); 42 Pa.C.S. § 6354(b).

Appellant's argument before *this* Court that he is entitled to review the victim's juvenile record is based on the United States Supreme Court case of *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The precise issue before the Court in *Davis* was "whether the Confrontation Clause [of the Sixth Amendment] requires that a defendant in a criminal case be allowed to impeach the credibility of a

prosecution witness by cross-examination directed at possible bias deriving from the witness's probationary status as a juvenile delinquent when such an impeachment would conflict with a State's asserted interest in preserving the confidentiality of juvenile adjudications of delinquency." *Id.* at 309, 94 S.Ct. at 1107, 39 L.Ed.2d at 349–50. Prior to trial in *Davis,* the prosecutor moved for a protective order to prevent any reference to the juvenile record of Richard Green, a crucial prosecution witness. Green at the time had been on probation after having been adjudicated a delinquent for burglarizing two cabins. Defense counsel, in opposing the request for a protective order, made it clear that he wanted to use the juvenile record:

> to show specifically that at the same time Green was assisting the police in identifying petitioner he was on probation for burglary. From this petitioner would seek to show—or at least argue—that Green acted out of fear or concern of possible jeopardy to his probation. Not only might Green have made a hasty and faulty identification of petitioner to shift suspicion away from himself as one who robbed the Polar Bar, but Green might have been subject to undue pressure from the police and made his identifications under fear of possible probation revocation. Green's record would be revealed only as necessary to probe Green for bias and prejudice and not generally to call Green's good character into question.

*Id.* at 311, 94 S.Ct. at 1108, 39 L.Ed.2d at 351. The trial court granted the protective order and the defendant was subsequently convicted.

Chief Justice Burger in his opinion held that the Sixth Amendment right of confrontation of witnesses requires that a defendant in a state criminal proceeding be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias as a result of the witness's juvenile record. Our supreme court in *Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453 (1978) followed the *Davis* decision and held that denial of permission for defense counsel to examine the juvenile record of

the prosecution's witness was error since it was impossible for counsel to know whether or not the juvenile record contained anything upon which he could argue that the witness was biased against the defendant.

Neither *Davis* nor *Slaughter* involved a request for the inspection of juvenile records to determine whether the prosecution witness had been convicted of *crimen falsi*. These cases, therefore, do not support Appellant's contention *at trial* that he is permitted to inspect juvenile records for convictions of *crimen falsi*. Appellant's counsel did not indicate that he wanted to examine the victim's juvenile record for possible bias. The trial court did not have appropriate reasons before it for granting defense counsel's request. Therefore, the trial court's refusal to permit inspection of the juvenile record of the victim was made without benefit of the "possible bias" argument and this argument cannot now be advanced on appeal.

As our supreme court indicated in *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975):

[i]t has long been the rule in this jurisdiction that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post trial. *Commonwealth v. McNeal*, 456 Pa. 394, 398, 319 A.2d 669 (1974); *Commonwealth v. Budd*, 443 Pa. 193, 195, 278 A.2d 879 (1971); *Commonwealth v. Raymond*, 412 Pa. 194, 202–203, 194 A.2d 150 (1963).

*Id.*, 462 Pa. at 60, 337 A.2d at 881. *See also Commonwealth v. Pitts*, 486 Pa. 212, 404 A.2d 1305 (1979).

■ Although the instant case involves evidence which was not admitted, rather than an evidentiary objection, we believe the rationale of *Stoltzfus* is equally applicable here. Appellant's counsel did not advance a "possible bias" argument in explaining to the court the reasons in support of his position that he should be permitted to review the victim's juvenile record. He cannot now be heard to complain that the trial court should have permitted review of the victim's juvenile record on the grounds of "possible bias" when that

argument was not made below. Appellant, therefore, failed to preserve the "possible bias" issue for review.

Judgment of sentence affirmed.