518 A.2d 1246

**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey TILLIA, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 4, 1986.

Filed Dec. 16, 1986.

304

William R. Lee, Scranton, for appellant.

Michael Basista, Assistant District Attorney, Scranton, for Com., appellee.

Before: WICKERSHAM, OLSZEWSKI and BECK, JJ.

OLSZEWSKI, Judge:

This is a direct appeal from the judgment of sentence imposed following a jury trial at which appellant was found guilty of operating a motor vehicle while under the influence of alcohol, 75 Pa.Cons.Stat.Ann. Sec. 3731(a)(1), (4) (Purdons Supp.1986) and homicide by motor vehicle while under the influence of alcohol, 75 Pa.Cons.Stat.Ann. Sec. 3735 (Purdons Supp.1986).[1] Following his conviction and the denial of post-verdict motions, appellant brought the instant appeal alleging six claims of error committed by the trial court. For the reasons stated below, we affirm the judgment.

## I.

The Commonwealth filed an information charging appellant with the crimes of operating a motor vehicle while under the influence of alcohol, 75 Pa.Cons.Stat.Ann. Sec. 3731(a)(1), (4); homicide by motor vehicle while under the influence of alcohol, 75 Pa.Cons.Stat.Ann. Sec. 3735; and homicide by motor vehicle while driving at an unsafe speed, 75 Pa.Cons.Stat.Ann. Sec. 3732. Appellant's first contention is that the trial court erred in permitting the Commonwealth to amend the information to charge the following offenses: operating a motor vehicle while under the influence of a controlled substance or alcohol, 75 Pa.Cons.Stat. Ann. Sec. 3731(a)(1), (4); homicide by motor vehicle while under the influence of alcohol or a controlled substance, 75 Pa.Cons.Stat.Ann. Sec. 3735; and homicide by motor vehicle while driving at an unsafe speed, 75 Pa.Cons.Stat.Ann. Sec. 3732. Appellant argues that the amendment was impermis-

1. Appellant was found not guilty of homicide by motor vehicle while driving at an unsafe speed, 75 Pa.Cons.Stat.Ann. Sec. 3732.

sible under Pa.R.Crim.P. 229 because different offenses were added to the information. We disagree.

Rule 229 provides:

### Rule 229. Amendment of Information

The court may allow an information to be amended when there is a defect in form, the description of the offense, the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 229. In *Commonwealth v. Stanley*, 265 Pa. Super. 194, 401 A.2d 1166 (1979), this Court articulated the following guidelines for assessing the propriety of permitting such an amendment:

(T)he courts of this Commonwealth employ the test of whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Stanley*, 265 Pa.Super. at 212–213, 401 A.2d at 1175 (footnotes omitted). The purpose of Rule 229 is to insure that a defendant is notified of the charges against him, and to avoid prejudice by prohibiting last minute additions of which the defendant is uninformed. *Stanley*, 265 Pa.Super. at 212, 401 A.2d at 1175.

Although a literal reading of Rule 229 appears to support appellant's contention, we fail to see any prejudice to appellant in the allowance of the amendment. The

308

conduct underlying the offenses, the events, and the penalty for the offenses are identical. Appellant had notice of the general charges nine months prior to trial when, in December of 1983, the arrest warrant was issued, and he was given two months notice of the specific offenses when, in July of 1984, the information was amended. Further, the record indicates that a continuance was granted thereby extending the preparation time before trial. The purpose and procedure of Rule 229 were satisfied as appellant had sufficient notice and adequate time to prepare his case.

Appellant argues, however, that *Commonwealth v. Plybon*, 279 Pa.Super. 329, 421 A.2d 224 (1980) is controlling. Indeed, that case is factually similar to the matter at hand. In *Plybon*, the original information charged the defendant with violating 75 Pa.Cons.Stat.Ann. Sec. 3731 (a)(3), driving under the combined influence of alcohol and a controlled substance. At trial, the Commonwealth sought to amend the information to include the offense of driving under the influence of alcohol, Sec. 3731(a)(1). The Court held that the defendant was prejudiced by the amendment because the elements of, and the defenses to, the amended charge would have materially altered the original information. *Plybon*, 279 Pa.Super. at 333, 421 A.2d at 225–226.

Appellant's reliance on *Plybon* is misplaced. In that case, the Commonwealth moved to amend only after it had rested its case and the defendant had demurred. *Plybon*, 279 Pa.Super. at 332, 421 A.2d at 225. Hence, the defendant had neither adequate notice of the amendment, nor time to prepare a defense to the amended charges. We believe that this crucial distinction between the two cases renders *Plybon* inapplicable.

■ Appellant also argues that he was prejudiced by the amendment because the evidence regarding the amended offenses was submitted to the jury and may have influenced the verdict. Appellant's argument is unpersuasive in view of the fact that the court sustained his demurrer as to the charges concerning driving under the influence of a controlled substance and driving under the combined influence

of a controlled substance and alcohol. Thus, only the charges listed in the original information were submitted to the jury. Accordingly, the lower court committed no error by granting the Commonwealth's motion to amend.

## II.

Appellant's second contention is that the trial court erred in not suppressing the results of the blood alcohol test. Specifically, appellant argues that the Commonwealth failed to attempt to preserve the blood sample for independent analysis.

The stipulation of facts entered into between the Commonwealth and appellant indicated that a blood sample was taken from appellant at a medical center in the early morning hours of October 16, 1983, and delivered to the state police barracks. According to the stipulation, if a Commonwealth criminologist would have testified, he would have stated that the percentage of blood alcohol from the test was 0.15%.[2] Pursuant to state policy, the blood sample was destroyed either the same day of the testing or the next day. The warrant for the appellant's arrest was not issued until December 9, 1983.

The statute authorizing the chemical testing procedures for blood alcohol content provides that the test result be made available to the defendant and permits the defendant to request that his/her own physician perform an additional, independent test. 75 Pa.Cons.Stat.Ann. Sec. 1547(g), (h) (Purdons Supp.1986).[3] Appellant argues that because the

2. A criminologist did, in fact, testify that the blood contained .15% alcohol (N.T. 239).

3. Section 1547 provides in part:
 (g) **Test results available to defendant.**—Upon the request of the person tested, the results of any chemical test shall be made available to him or his attorney.
 (h) **Test by personal physician.**—The person tested shall be permitted to have a physician of his own choosing administer an additional breath, blood or urine chemical test and the results of the test shall also be admissible in evidence. The chemical testing given at the direction of the police officer shall not be delayed by a person's attempt to obtain an additional test.

Pennsylvania Rules of Criminal Procedure do not allow any discovery of Commonwealth evidence until after the information is filed, it would have been impossible for him to request that the blood sample be preserved for independent analysis as the sample had already been destroyed. Appellant also asserts that because a test result indicating a blood alcohol level of 0.10% or more is a per se finding of intoxication, the Commonwealth should be required to take reasonable steps to preserve the blood sample for independent testing.

■ The same argument, albeit in a different context, has been rejected in both the Supreme Court of the United States and this Court. In *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), a unanimous Court established the standard whereby evidence is constitutionally required to be preserved for disclosure. Such evidence must "(1) (possess) an exculpatory value that was apparent before the evidence was destroyed, and (2) also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means." *Trombetta*, 467 U.S. at 489, 104 S.Ct. at 2534. Further, there must be no indication that the authorities destroyed the evidence in order to circumvent the disclosure requirements of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Trombetta*, 467 at 488, 104 S.Ct. at 2534. Finding none of the requirements satisfied, the Court held that due process does not require the police to save a sample from a breathilyzer for independent testing and inspection. *Trombetta*, 467 U.S. at 491, 104 S.Ct. at 2535. When the same issue was presented before this Court, we concluded that the due process protections of the Pennsylvania Constitution required no more than those afforded by the federal constitution. *Commonwealth v. Gamber*, 352 Pa.Super. 36, 41, 506 A.2d 1324, 1327 (1986). Hence, we hold that the Commonwealth was not required to preserve a

75 Pa.Cons.Stats.Ann. Sec. 1547(g), (h).

breath sample used in administering an intoxilyzer test. *Gamber*, 352 Pa.Super. at 41, 506 A.2d at 1328.[4]

The rationale underlying both *Trombetta* and *Gamber* is equally applicable in the present case. In applying the guidelines used in those cases, we look to the circumstance leading to the destruction of the blood sample. Appellant does not contend, nor do we find any evidence in the record, that the Pennsylvania State Police consciously destroyed appellant's blood sample in order to prevent discovery of exculpatory matter.[5] Rather, the blood sample was destroyed pursuant to an established policy of the authorities.[6]

**4.** We note that some courts have required the preservation of test samples. *See e.g., Oshrin v. Coulter,* 142 Ariz. 109, 688 P.2d 1001 (1985) (due process requires preservation of breath sample); *Anchorage v. Serrano,* 649 P.2d 256 (Alaska Ct.App.1982) (due process requires the prosecutor make reasonable efforts to preserve a breath sample or take steps to allow defendant to verify test results; defendant must be given an opportunity to secure independent testing; *Baca v. Smith,* 124 Ariz. 353, 604 P.2d 617 (1979) (defendant must be advised of right to have second test sample preserved, but must make demand that the second sample be taken and, if convicted, pay the resultant expenses); *Garcia v. District Court,* 197 Colo. 38, 589 P.2d 924 (1979) (defendant must be given sample of breath in a form which permits independent testing); *People v. Hitch,* 12 Cal.3d 641, 527 P.2d 361, 117 Cal.Rptr. 9 (1974) (due process requires prosecutor to preserve and disclose breath sample); *cf. Howard v. Coffer,* 150 Ga.App. 579, 258 S.E.2d 195 (1979), *citing,* Ga.Code Ann. Sec. 68A–902.1(a)(3) (authorities must provide defendant with notice of right to independent test).

Other courts have expressly found that there is no duty to preserve test samples. *See e.g., United States v. Dela Espriella,* 781 F.2d 1432 (9th Cir.1986) (failure to preserve currency not a due process violation); *State v. Young,* 228 Kan. 355, 614 P.2d 441 (1980) (statute not require preservation of breath sample); *Palmer v. State,* 604 P.2d 1106 (Alaska 1979) (defendant need not be advised of right to independent test of breath sample) and cases cited therein.

**5.** Appellant refers to *Commonwealth v. Koebach,* 40 Lehigh L.J. 503 (1984), in which the court held that the Commonwealth must take reasonable steps to preserve the defendant's blood sample for independent analysis. That decision is not inconsistent with the instant case. In *Koebach,* the defendant made an informal discovery request for the blood sample prior to the time the sample was destroyed. *Koebach,* 40 Lehigh L.J. at 505. In effect, the authorities appeared to act in order to circumvent the discovery request. Such is not the case here.

**6.** Testimony indicated that although the blood samples could have been preserved for months if refrigerated, the samples are destroyed

*See Trombetta,* 467 U.S. at 488, 104 S.Ct. at 2534 (destruction of sample pursuant to departmental policy did not circumvent *Brady* requirement).

Under the guidelines of *Trombetta,* appellant's blood sample must be material in that its exculpatory nature must be apparent prior to its destruction and it must be irreplaceable before a constitutional error arises. It is extremely unlikely that the test sample of appellant's blood would have been exculpatory. The blood sample was drawn at a medical center pursuant to the requirements of 75 Pa.Cons. Stat.Ann. Sec. 1547(c),[7] and the requirements of the Clinical Laboratory Act, 35 Pa.Stat.Ann. Secs. 2151–2165 (Purdons 1977). The test itself was performed by a criminologist at

pursuant to official policy because of the lack of proper storage facilities and the safety problems involved with the storage of blood. (N.T. 226–28, 243–44.)

7. Section 1547(c) provides:

(c) **Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

(1) Chemical tests of breath shall be performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the departments of Health and Transportation. Devices shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation. For purposes of breath testing, a qualified person means a person who has fulfilled the training requirement in the use of the equipment in a training program approved by the Departments of Health and Transportation. A certificate or log showing that a device was calibrated and tested for accuracy and that the device was accurate shall be presumptive evidence of those facts in every proceeding in which a violation of this title is charged.

(2) Chemical tests of blood or urine shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose using procedures and equipment prescribed by the Department of Health. For purposes of blood and urine testing, qualified person means an individual who is authorized to perform those chemical tests under the act of September 26, 1951 (P.L.1539, No. 389), known as "The Clinical Laboratory Act." 75 Pa.Cons.Stat.Ann. Sec. 1547(c).

the police laboratory using a gas chromotographer, an accepted testing device. The criminologist testified as to both the accuracy and reliability of the device, as well as the safeguards and procedures used. (N.T. 238–240). In particular, the criminologist testified that a more accurate test result would not have been obtained if two tests had been administered. (N.T. 242). Given that the gas chromotography analysis indicated appellant's blood alcohol level exceeded the legal limit, it is more likely that the blood sample provided inculpatory, not exculpatory, evidence. Further, appellant's due process rights were preserved during trial. Appellant had ample opportunity, and indeed, he attempted to undermine the accuracy and reliability of the test device and procedures, as well as the credibility of the analyst.

We reiterate that the Due Process Clause of the Pennsylvania Constitution requires that the Commonwealth disclose favorable evidence that is material to either the guilt or punishment of a defendant. Pa. Const. Art. 1 Sec. 9; *Gamber*, 352 Pa.Super. at 41–42, 506 A.2d at 1327. Our decision today is in keeping with that constitutional mandate. The applicable statute does not require that the Commonwealth preserve test samples for independent analysis. *See* 75 Pa.Cons.Stat.Ann. Sec. 1547. Section 1547 only requires that the test *results* be available to a defendant and permits the party to request that his/her own physician perform the test. 75 Pa.Cons.Stat. Sec. 1547(g). In effect, a test sample serves a limited function; it is merely the "raw data" which is analyzed in the laboratory. *See Trombetta*, 467 U.S. at 487, 104 S.Ct. at 2533. Indeed, appellant does not contend that had the blood sample been preserved, it would have been introduced into evidence at trial. The test result, not the test sample, is the material evidence which is determinative of a defendant's guilt or punishment.[8] Thus, due process requires that the Common-

8. For this reason, our decision today is not in conflict with *Commonwealth v. Arenella*, 306 Pa.Super. 119, 452 A.2d 243 (1982), in which this Court held, pursuant to former Pa.R.Crim.P. 310, that evidence alleged to be marijuana must be preserved for independent analysis.

wealth provide to a defendant the result of the test and the opportunity to question the reliability or accuracy of the test result. Because appellant had ample opportunity to scrutinize the reliability of the test result, the accuracy of the testing procedures and equipment, and the credibility of the analyst, we conclude that due process was satisfied.

### III.

Appellant next contends that the trial court erred in permitting hearsay testimony to be admitted into evidence. He argues that the testimony by a Commonwealth witness regarding the decedent's statements prior to the accident was inadmissible hearsay and not subject to the state of mind exception.

On direct examination, a Commonwealth witness testified to the following:

Q. How is that you came about to follow (the decedent) home in the first place?

A. Well, he was tellin' me that he didn't want to drive that evening. So he said, "Why don't you follow me home so I can have a good time here, you know, stay here at the bar."

Q. Okay. And, in fact, you did follow him home; did you not?

In *Arenella*, the marijuana was the evidence to be admitted into evidence. In the present case, the blood test result, not the blood sample, was admitted into evidence. *Cf. Commonwealth v. Sheppard*, 341 Pa.Super. 403, 491 A.2d 879 (1985) (Commonwealth's failure to preserve a photographic array violated due process).

Rather, our holding today is in keeping with prior decisions governing the suppression of evidence due to the destruction of the *evidence* related to it. For example, in *Commonwealth v. Haber*, 351 Pa.Super. 79, 505 A.2d 273 (1986), we stated:

(I)n order for the destruction of the notes to be a violation meriting a mistrial, proof is required of the following: suppression of evidence by the prosecution after a request by the defense; the favorable character of the evidence for the defense; and the materiality of the evidence. [*Commonwealth v.*] *York, Id.*, 319 Pa.Super. [13] at 18, 465 A.2d [1028] at 1029 [1983].

*Haber*, 351 Pa.Super. at 87, 505 A.2d at 278.

A. Yes, I did.

 * * * * * *

Q. Tom, going back to the time you gave (the decedent) a ride, you indicated on the way to his house, that he wanted a ride so he didn't have to drive that night?

A. Yes.

Q. What did he indicate to you, if anything, on the way back to the bar?

A. He said he didn't have to worry about drivin' that night, he could get drunk; he didn't have to worry about gettin' in any trouble at all. He didn't want to drive at all. That's what he was tellin' me. That's why he wanted to take his car home.

Q. Did you take anyone else home that night?

A. No, I didn't.

Q. But Joe made the point that he wanted to take his car home; did he not?

A. Yes, he did, because he asked me—about 5:00, 5:30, he asked me to take him home before it got too late, drop off his car so he could go back to the bar.

(N.T. 259, 265–266).[9]

The admissibility of these statements is significant because the question of whether appellant or the decedent was driving the automobile is in issue. Appellant maintains that the statements were used to prove the truth of the matter; namely, that because the decedent stated he did not want to drive that evening he, in fact, did not drive appellant's car.

A fair reading of the testimony indicates that the decedent's statements were being offered to prove the truth of the facts contained therein, not merely to prove the fact that the statements were made. In other words, the Commonwealth's purpose was to prove that the decedent intended to continue drinking at a bar, and not to drive his car that evening. Thus, the decedent's statements are hearsay.

**9.** Although there is no objection on the record to this testimony, we note that appellant's pre-trial motion in limine was denied.

A declarant's out-of-court statement relating to his reason or intention in performing an act made at or near the time of acting is admissible, however, under the state of mind exception to the hearsay rule. *Commonwealth v. Henderson,* 324 Pa.Super. 538, 545–547, 472 A.2d 211, 214–216 (1984).

The decedent's hearsay statements clearly fall within this exception to the hearsay rule. Contrary to appellant's assertion, the statements do not establish that decedent, in fact, was driving the vehicle. The statements merely indicate that it was the decedent's intent to continue drinking and not to drive his vehicle that evening. Accordingly, the testimony was properly admitted hearsay pursuant to the state of mind exception.

## IV.

We also reject appellant's contention that the court permitted the Commonwealth's attorney to make improper comments during closing argument.

Appellant takes issue with two statements made by the prosecutor. First, appellant contends that the prosecutor made a request for sympathy from the jury. During closing argument, the Commonwealth's attorney stated:

> Have you ever heard one witness say that Jeffrey Tillia (appellant), from the time of that accident to the time he was at the hospital, was remorseful over the condition of (the decedent); that he was concerned; that he kept asking and asking about his friend who was in the car accident with him? Ladies and Gentlemen, I submit there is no mention as to that by the defendant. The only thing he wanted to get out was that he wasn't driving.

(R. 26a–27a). The court overruled appellant's objection and denied his motion for a mistrial.

Although a prosecutor's personal opinion regarding a defendant's guilt, credibility, or trial strategy are beyond the scope of permissiveness, "the prosecution may argue reasonable inferences from the facts and comment upon the

credibility of the witnesses." *Commonwealth v. Smith,* 341 Pa.Super. 564, 572, 492 A.2d 9, 13 (1985) (citations omitted). Only those remarks which bias the minds of the jury necessitate a new trial. *Commonwealth v. Williams,* 346 Pa.Super. 456, 460, 499 A.2d 1089, 1091 (1985), *quoting, Commonwealth v. Pinder,* 310 Pa.Super. 56, 67–68, 456 A.2d 179, 185 (1983). Because the effects of such remarks depend largely on the atmosphere at trial, the question of whether such statements warrant a new trial is left to the trial court which can evaluate the tone of the remarks and reactions of the jury. *Williams,* 346 Pa.Super. at 460, 499 A.2d at 1091.

■ After scrutinizing the prosecutor's closing argument, we find nothing which convinces us that the trial court improperly denied appellant's motion for a mistrial. Whether or not appellant expressed remorse is irrelevant to the determination of guilt. Further, any possible prejudice resulting from the statement was neutralized by the comprehensive curative instruction to the jury to disregard the remark.

Secondly, appellant argues that the prosecutor's comment regarding appellant's concern with the speed limit was an improper inference. During closing argument, the prosecutor stated:

Think about what the defendant is telling you, Ladies and Gentlemen. Why does the defendant care if it was 35, 45 or 55 (miles per hour speed limit) at the scene of the accident? And why would they take pictures showing you that at the scene of the accident, there's a 35–mile-an-hour zone? Use your common sense. Why do they care what the speed limit is? If Joseph Poll (the decedent) was driving that vehicle, it doesn't matter if the speed limit was 10 miles an hour. The defendant wouldn't be guilty of it; would he? But the defendant certainly would be concerned what the speed limit was if he was driving the vehicle, because it's one of the counts of homicide by vehicle, is that he was not in compliance with the traffic laws, that being at a safe speed. So, certainly,

he would want to prove that at that point, a 35–mile-an-hour zone, "if I was driving, I'm not guilty of homicide by vehicle for safe speed." But it tells you something else also, Ladies and Gentlemen. Who was driving the vehicle.

(N.T. 572–573).

■ This comment cannot be said to have deprived appellant of a fair trial by inciting bias or prejudice in the minds of the jury. The statement was an inference based upon the testimony, not an expression of the prosecutor's personal opinion or belief as to appellant's guilt or credibility. Further, we note again that the court gave an explicit cautionary jury instruction which cured the prejudice, if any, of this remark. In that instruction, the court specifically referred to counsel's argument and admonished the jury that regardless of who was driving the vehicle that evening, the Commonwealth must prove all the elements of the offense beyond a reasonable doubt. In light of this curative instruction and of the trial court's ability to better evaluate the effect of the comment on the jury, we conclude that the prosecutor's statements were within the realm of permissible argument.

## V.

Appellant's fifth contention is that the verdict was against the weight and sufficiency of the evidence. Appellant's contention is unpreserved on the record but, nonetheless, unpersuasive on the merits.

Appellant raised this contention in boilerplate fashion in his motions in arrest of judgment and for a new trial. This court has consistently held that a post-verdict motion, stating merely that the evidence was insufficient to support the verdict or that the verdict was against the weight of the evidence, "will preserve *no* issue for appellate review unless the motion goes on to specify *in what respect* the evidence was insufficient, or *why* the verdict was against the weight of the evidence." *Commonwealth v. Holmes*, 315 Pa.Super. 256, 259–260, 461 A.2d 1268, 1270 (1983) (*en*

*banc*) (emphasis in original). Appellant's boilerplate allegations do not preserve the issues here before us.

■ Despite the technical forfeiture of these issues, we will examine the merits of appellant's argument because the trial court has examined the matter in detail. Based upon our examination of the record, we affirm the trial court's finding that the verdict was not against the weight and sufficiency of the evidence.

In determining whether the evidence is sufficient to sustain a verdict, we are guided by the following standard:

Whether accepting as true all of the evidence viewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilty beyond a reasonable doubt.

*Commonwealth v. Gamber*, 352 Pa.Super. 36, 44, 506 A.2d 1324, 1329 (1986), *quoting, Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975 (1982), *cert. denied*, 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983). The determination of whether to grant a new trial on the grounds that the verdict was against the weight of the evidence is left to the sound discretion of the trial court and is reviewable for an abuse of that discretion. *Commonwealth v. Starks*, 298 Pa.Super. 213, 216, 444 A.2d 736, 738 (1982).

In the instant case, the jury found appellant guilty of homicide by motor vehicle and operating a motor vehicle while under the influence of alcohol. In order to support the verdict, the Commonwealth must prove that appellant was driving a motor vehicle, that he was intoxicated during that time, and that a death was the unintentional result of his driving. 75 Pa.Cons.Stat.Ann. Secs. 3735, 3731(a)(1), (4). Appellant's primary contention is that the evidence does not establish that he was driving the vehicle at the time the death occurred.

Keeping in mind that we must accept all of the evidence presented by the Commonwealth as true, *Gamber*, 352

Pa.Super. at 44, 506 A.2d at 1329, we will summarize the testimony. The initial testimony supporting the conclusion that appellant was driving at the time of the accident was given by Joseph Soltis. Soltis was the first person to arrive at the scene of the accident. He testified that the car was resting on the passenger side door and that the "blond hair man" was directly on top of the decedent. (N.T. 35–36). Soltis went on to state that the decedent's head was up against the passenger side of the car. (N.T. 38–40). Soltis also testified that he found a pair of eyeglasses directly behind the driver's seat, (N.T. 43–44), and that he handed the glasses to appellant who immediately put them on. (N.T. 44–45). He also testified that appellant would just have had to straighten up to be completely on the driver's side. (N.T. 66).

The next witness to confirm Soltis's testimony was Daniel Lester, who was one of the next persons to arrive at the scene. He testified that appellant's feet were on the driver's side of the transmission hump, (N.T. 85), and that, generally, appellant was in the driver's position. (N.T. 91, 94).

The next collaborating witness was Timothy Roland, an employee of the medical center, who was called to the scene of the accident to remove the decedent from the crash. Roland stated that the decedent was on the passenger side. (N.T. 142, 168).

Other witnesses that were in appellant's and decedent's company on the day of the accident testified to the fact that the decedent brought his car home early in the evening. Further testimony revealed that decedent indicated he did not want to drive that day. (N.T. 259, 265–266). Clearly, the above testimony, including testimony by the tow truck driver who stated that decedent's bandana was lodged on the far passenger side (N.T. 300), is more than sufficient to establish that appellant was driving.

The next element which must be proven is that appellant was under the influence of alcohol. The first witness to establish this was police officer George Price. At the

accident scene he described appellant's condition as being intoxicated. (N.T. 106). It was at officer Price's request and with appellant's consent that Dr. Schill, the emergency room doctor drew blood from appellant for a blood alcohol test. (N.T. 187). The results of that blood alcohol test showed that appellant had a blood alcohol level of 0.15%, (N.T. 239), well above the 0.10% blood alcohol level which gives rise to a presumption of intoxication.

There were also witnesses who testified that appellant had been drinking all day. (N.T. 269). Some of his companions saw him drinking shots of whiskey. (N.T. 323). Finally, a half empty wine bottle and beer bottles were recovered immediately outside the car and a beer bottle was found inside the car at the accident scene. (N.T. 351). There is more than sufficient testimony to prove that appellant was under the influence of alcohol.

Having been presented with this evidence, the jury reasonably could have found the elements of the offenses were proven beyond a reasonable doubt. Accordingly, appellant's contentions regarding the sufficiency of the evidence and the verdict are without merit.

## VI

Appellant's final contention is that the delay of nineteen months from the time of verdict until sentencing denied appellant his constitutional right to a speedy trial and violated both Pa.R.Crim.P. 1123 and Lackawanna County Local Rule 1123.[10]

Appellant was convicted by a jury on September 30, 1984. After obtaining a transcript, appellant filed his brief in support of post-verdict motions on April 4, 1985. Pursuant to Lackawanna County Local Rule 1123(d), the Commonwealth's brief was due within twenty days of that date.[11]

10. The Commonwealth does not oppose this contention.

11. Lackawanna County Local Rule 1123 provides in part:
 (d) Within twenty (20) days after the filing of Defendant's Briefs, unless the time be extended by the Trial Judge for cause shown, the District Attorney shall file Reply Briefs and serve Counsel for

Appellant alleges that on May 15, 1985, the Commonwealth requested that the scheduled argument be continued.[12] A new briefing schedule was allegedly set up with the Commonwealth's brief due on October 11, 1985, and argument on October 21, 1985. Appellant maintains that on October 21, 1985, the Commonwealth, which had not filed a brief, asked that argument again be continued for a few days.

On November 14, 1985, appellant filed an additional post-verdict motion alleging a speedy trial violation and a violation of both Pa.R.Crim.P. 1123 [13] and Lackawanna County Local Rule 1123. The Commonwealth was ordered to respond by December 9, 1985, and oral argument was scheduled to be held on December 13, 1985. The Commonwealth filed its brief in opposition to appellant's post-verdict motions on November 27, 1985. The motions were denied on February 4, 1986, and appellant was sentenced on April 4, 1986.

In addressing the question now raised, the trial court held that the issue was moot because the Commonwealth eventually did file its brief. The trial court also suggested that a more appropriate remedy would have been a rule to show cause why the Commonwealth's attorney should not be held in contempt for failing to comply with Pa.R.Crim.P. 1123.

■ We agree with the trial court that contempt sanctions may be warranted where the Commonwealth ignores

> Defendant and the Trial Judge. Upon the filing of Defendant's Briefs or at the expiration of the thirty (30) day period allowed for filing same, the District Attorney, with the concurrence of the Court Administrator, shall list the case for Argument.
> (e) Should any party default in filing briefs or seeking extensions, then the court may take such action as it deems proper.

**12.** Appellant notes that the Commonwealth's brief was due on May 10, 1985, with argument scheduled for May 15, 1985. We are unable to confirm these dates or the dates which immediately follow as the record does not include the scheduling orders. We note, however, that the trial court did not take issue with appellant's presentation of these events.

**13.** Rule 1123 provides in relevant part:
> Argument, a hearing, or both shall be scheduled and heard promptly after such motions are filed.
> Pa.R.Crim.P. 1123.

an order of the court issued pursuant to the Pennsylvania and local rules of procedure. The trial court's summary disposition of this matter, however, does not resolve the constitutional claim raised by appellant, namely, that an extended delay between the time verdict was entered and sentencing denied appellant his right to a speedy trial.

In *Commonwealth v. Glover*, 500 Pa. 524, 458 A.2d 935 (1983), the Supreme Court of Pennsylvania stated:

> Neither this Court nor the United States Supreme Court has expressly held that the disposition of post-verdict motions or sentencing is a part of trial for Sixth Amendment purposes. However, we will assume arguendo that disposition of post-verdict motions and sentencing are a part of trial for purposes of defendant's Sixth Amendment right to a speedy trial.
>
> In determining whether a defendant's constitutional speedy trial right has been violated, it must first be determined whether the delay itself is sufficient to trigger further inquiry. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Jones v. Commonwealth*, 495 Pa. 490, 434 A.2d 1197 (1981). If the delay is sufficient to trigger further inquiry, the reviewing court must balance the length of the delay with the reason for the delay, the defendant's timely assertion of his right to a speedy trial, and any resulting prejudice to the interest protected by the right to a speedy trial. *Barker v. Wingo, supra; Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597 (1980).

*Commonwealth v. Glover*, 500 Pa. at 527–528, 458 A.2d at 937 (footnote omitted).

 In the instant case, there was nearly a nineteen month delay between the time the verdict was entered and the time appellant was sentenced. This time period did not exceed the maximum term of imprisonment for which appellant was convicted. Hence, the delay was not prima facia invalid. *See Commonwealth v. Pounds*, 490 Pa. 621, 627–628, 417 A.2d 597, 600 (1980). Nor is there evidence that the Commonwealth deliberately delayed sentencing in order

to force appellant into a compromising position. Our first question, then, is whether the length of the delay is sufficient to warrant further scrutiny. In doing so, we note that the Supreme Court has already determined that a two-year delay triggered further scrutiny. *Pounds*, 490 Pa. at 628, 417 A.2d at 600. *See Commonwealth v. Glover*, 500 Pa. 524, 458 A.2d 935 (1983) (forty-nine month delay deserved inquiry). We are reminded that our inquiry into the alleged violation of the right to a speedy trial depends upon the circumstances of each case. *Pounds*, 490 Pa. at 627, 417 A.2d at 599. Hence, we decline to fix a time period which would automatically determine whether a closer examination of the facts is warranted. Rather, we find that the nineteen month delay in the instant case is sufficient to justify such an examination.

■■■ Having made this initial determination, we approach the next level of the inquiry by isolating the first of the four factors—the length of the delay. As noted before, there was nearly a nineteen month delay between the time of the verdict and the sentencing. We are not convinced that such a delay is tantamount to a violation of appellant's right.

Unlike the case for a pre-trial delay, some delay before sentencing is more tolerable here because a determination of guilt has already been made. Whether the length of the delay in this case is intolerable depends upon the circumstances of each case. *Barker v. Wingo*, 407 U.S. 514, 530–531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). We are not so appalled by the length of the delay here, and appellant fails to isolate any specific reasons supporting his claim that the delay was overly long. *See, Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. at 2192 (citing example). In addition, we note that appellant was free on bail during this time. Based upon the circumstances present here, we will weigh the first *Glover* factor in favor of the Commonwealth.

The second factor to be examined is the justification for the delay. The record indicates that seven months of the delay is attributed to satisfying appellant's request for a

transcript. We are cognizant of the fact that judicial resources are limited and that the preparation of a transcript inevitably requires some time. For this reason, we cannot fault the Commonwealth for failing to deliver a transcript immediately subsequent to the trial. The Commonwealth fails, however, to offer any excuse for the remaining twelve months' delay. Consequently, the one year delay will be weighed against the Commonwealth.

The third factor questions whether appellant asserted his Sixth Amendment right without unreasonable delay by a timely request for the disposition of his post-verdict motions. Appellant did not raise this contention until the Commonwealth had missed the second briefing deadline (November 1985), more than five months after argument was first scheduled (May 1985). We do not characterize appellant's actions as timely, nor would we expect appellant to request a speedy disposition of his motions as appellant was released on bail pending the trial court's ruling and sentencing. Further, we note that once appellant asserted his right, his motions were disposed of within three months and he was sentenced shortly thereafter. Accordingly, we will weigh this factor against appellant.

The final factor questions whether appellant was prejudiced by the delay. Appellant contends he was prejudiced because he was: (1) forced to suffer anxiety and depression; (2) unable to secure employment or establish a business due to his potential imprisonment; (3) unable to fulfill his obligations under a child support order; and (4) unable to make marriage plans. These interests are of a type which the Sixth Amendment was designed to protect. *Pounds,* 490 Pa. at 629 n. 10, 417 A.2d at 601 n. 10.

Balancing these four factors, we find appellant's claim of a constitutional violation is without merit. Three factors— the relatively short delay attributed to the Commonwealth (seven months), appellant's failure to promptly assert his claim (accounting for five months' delay), and the lack of deliberativeness on the part of the Commonwealth—weigh heavily against the prejudice caused by the delay. Thus,

we conclude that appellant was not denied his right to a speedy trial.

For all the reasons stated above, judgment of sentence is affirmed.