## Commonwealth v. Dagnon

*William Shaffer, assistant district attorney,* for the Commonwealth.

*Alexander Lindsay,* for defendant.

KIESTER, *S.J.,* February 8, 1991—The amount of work that counsel for the Commonwealth and defendant have devoted to defendant's omnibus pretrial motion is substantial. It is evidenced by the lengthy testimony (that has not been transcribed) and the voluminous briefs that have been filed with the court. The key issues raised by defendant are condensed as follows.

## ISSUES

Does the law (75 Pa.C.S. §1547) require that a blood alcohol test be made on whole blood or is a test made on blood serum admissible in a DUI prosecution?

Does the law (75 Pa.C.S. §1547) require the Department of Health to promulgate rules and regulations adopting procedures and approving equipment in testing whole blood and/or blood serum for alcohol?

Is the result of a blood alcohol test obtained at the hospital laboratory by search warrant, the blood having been drawn for medical purposes and tested by the blood serum method in the treatment of defendant and not at the request of the Commonwealth, admissible in evidence on a DUI charge (75 Pa.C.S. §1547)?

Does the Commonwealth have a duty to investigate and disclose to defendant in discovery and pretrial proceedings as well as trial all the treatment received by defendant from the time of the accident to the withdrawal of the blood when the blood alcohol results are offered for forensic purposes as evidence in a DUI prosecution?

Counsel have raised other issues but the foregoing are the principal issues upon which the court will rule.

## FACTS

Defendant is being charged and prosecuted for homicide by vehicle, DUI-related and other criminal offenses. Defendant was involved in an automobile accident. He was removed from the scene of the accident and taken to the Allegheny General Hospital. At the hospital blood tests were performed for routine medical and diagnostic purposes. They were not requested by defendant or by any police agency.

The blood of defendant contained an alcohol content of 0.186 percent.

When Patrolman Daniel J. Hahn of the Cranberry Township Police Department arrived at the scene of the accident on April 15, 1990 he found defendant in the drivers seat and noticed an odor of alcohol on his breath. His investigation discovered that there was a head-on collision and that defendant's vehicle was on the wrong side of the highway. He called for an ambulance.

On May 2, 1990 a search warrant issued and the Commonwealth obtained from Allegheny General Hospital the results of the blood alcohol test. Defendant has not attacked the validity of the search warrant.

The accident occurred before midnight on April 15. The blood of defendant was drawn at 1:40 a.m. and tested at 6:26 a.m. The treatment of defendant during those intervals was not developed. The source of the blood, i.e. arterial or venous, is not clear.

At Allegheny General Hospital whole blood is taken and reduced by a centrifuge machine to remove red blood cells. The result is blood serum.

The alcohol content of the blood serum is measured on a DuPont ACA 5 (discrete clinical analyzer). Blood serum shows a higher percentage of alcohol than whole blood. Allegheny General Hospital uses a conversion table from Clinical Diagnosis and Management by Laboratory Methods. The conversion factor of 1.18 is the average for the entire population.

In the case of this defendant the technician divided the machine result of 0.186 percent blood alcohol content by a 1.18 percent factor to obtain for defendant a blood alcohol content of 0.158 percent.

Allegheny General Hospital is approved by the Department of Health to determine blood alcohol content by both blood analysis and blood serum analysis. (Pa. Bulletin July 8, 1989, at 2389.) Allegheny General Hospital does its blood alcohol testing by the blood serum method.

The Clinical Laboratory Act empowers the Department of Health to license "laboratories" and to adopt rules and regulations for the proper enforcement of the act with regard to:

"(1) Contents of application;

"(2) Adequacy of laboratory and equipment;

"(3) Means and standards of accuracy of laboratory procedures;. . ." 35 P.S. §§2151, 2161.1.

The Commonwealth through the Department of Health has not promulgated specific rules and regulations detailing how specimens for blood alcohol analysis must be collected and processed other than as hereinafter stated. Licensees are required to use good laboratory practices. The Pennsylvania Department of Health is a member of the National Committee for Clinical Laboratory Standards "and endorses the standards which it establishes. . ." "None of the [Pennsylvania] statutes [35 P.S. §2151 et seq.; Motor Vehicle Code 75 Pa.C.S. §§1547 and 3755] or the regulations promulgated pursuant to them have detailed instructions for collecting or processing specimens for blood alcohol analysis." Letter dated February 13, 1989 of M. Jeffrey Shoemaker, Ph.D., Chief, Toxicology Section, Division of Chemistry & Toxicology, Bureau of Laboratories, Dept. of Health (def. exh. B); Proposed Guideline, Blood Alcohol Testing in the Clinical Laboratory, of NCCLS (def. exh. A).

Inter alia, the NCCLS document—Technical and Administrative Guidance on Laboratory Procedures Related to Blood Alcohol Testing—states:

"2.2 Types of specimens—When the term 'blood' is used in m.v. stats, *whole blood is the universal meaning*. Most state laws define the alcohol element of drinking/driving offenses wholly or partly in terms of blood alcohol concentrations. Hence, if blood rather than breath is to be analyzed for alcohol, either exclusively or primarily, in connection with traffic law enforcement, *it is best to analyze whole blood.*" NCCLS document, *supra,* at 190-1. (emphasis supplied)

Section 2.2 continues with an explanation of the difference between whole blood and serum blood as to alcohol concentration. Commencing at 191 and continuing through 202 is a discussion of NCCLS standards for specimen collection, handling and preservation (section 2.3); specimen handling (section 2.4); chain of custody procedures (section 3.00); and methods of analysis (section 4.00).

It is again noted that proposed guideline T/DM6-P, titled Blood Alcohol Testing in the Clinical Laboratory, is endorsed as the standard for blood alcohol testing by the Pennsylvania Department of Health. (Def. exh. B.) The guidelines contain 214 pages, plus several pages of bibliography and sample forms.

## DISCUSSION

The Commonwealth maintains that at the pretrial stage the trial court is not empowered to rule on the suppression of evidence unless the issue involves a violation of defendant's constitutional rights.

In this case defendant does not claim a violation of any constitutional rights. What defendant does claim is that the admission of certain evidence would violate his statutory and legal rights and would be highly prejudicial to him.

Rules of Civil Procedure 323 (omnibus pretrial motion for relief) and 306 (suppression of evidence) provide the opportunity for a defendant to have the court suppress any evidence alleged to have been obtained in violation of the defendant's rights. The case cited by the Commonwealth as its authority was changed when the Supreme Court eliminated the word "constitutional" from "any evidence alleged to have been obtained in violation of the defendant's *constitutional rights.*" Pa.R.C.P. 323(a) (last amendment effective January 1, 1986).

The limiting of suppression of evidence to issues involving evidence alleged to have been obtained in violation of constitutional rights would lengthen jury trials and be a radical reversal of criminal practice and procedure. In the interest of both a fair trial for defendant and the administration of justice it is highly important that the complex legal issues raised by defendant be decided prior to a jury trial.

## Defendant's Motion to Suppress

In support of the omnibus pretrial motion, defendant has raised several issues. These will be discussed.

### "Testimony of the witness, John Csakvary, should be suppressed."

The court on December 10, 1990 reserved a decision on this motion for an in camera hearing before the trial judge.

Act of Assembly 75 Pa.C.S. §1547(c) authorizes the chemical testing of defendant's blood. It does not distinguish between whole blood and blood serum. Allegheny General Hospital has a clinical laboratory licensed and approved by the Department of Health. It is licensed under the Clinical Laboratory Act, and is a legal laboratory for medical and diagnostic purposes.

The guidelines promulgated by the Department of Health are those set forth by NCCLS (T/DM6-P, *supra*). There is insufficient evidence that in its testing Allegheny General Hospital follows those guidelines.

The testing of defendant for alcohol in the blood was on blood serum, not whole blood. This was proper and legal for medical and diagnostic purposes. Testing on blood serum for alcohol content for use as evidence of a violation of section 3731 of the Motor Vehicle Code is not authorized. Under section 1547, chemical testing to determine amount of alcohol must be made on whole blood for the test results to be admissible in evidence. (75 Pa.C.S. §1547; NCCLS standards, def. exh. A.)

In addition to the testing of the whole blood a laboratory is required to use the NCCLS guidelines as approved by the Department of Health. The Commonwealth also failed to establish that the Allegheny General Hospital complied with the procedures required by the Department of Health in adopting the NCCLS guidelines for testing blood alcohol. (Def. exhs. A and B.)

Assuming the legality of the blood serum testing for forensic purposes, the Commonwealth failed to establish that defendant is the "average" person described in the NCCLS guidelines, to which the 1.18 conversion factor would be applicable.

Another burden that the Commonwealth failed to address was the treatment, if any, (drugs, etc.) defendant received at the scene of the accident, in the ambulance and at the hospital prior to removal of the blood specimen. The duty was on the Commonwealth to develop all such relevant facts in order that the experts both for the Commonwealth and defendant could determine the effect, if any, on the test results.

The facts involving this defendant and the blood testing differ from the appellate court cases that have been cited.

As argued by the Commonwealth, the facts of the *Hipp* case are quite similar to this case. The distinction is that defendant did not dispute the validity of the blood test. The record fails to establish whether the test was made on whole blood or blood serum. *Commonwealth v. Hipp,* 380 Pa. Super. 345, 551 A.2d 1086 (1988).

In the *Bullock* case the issue of test results of whole blood versus blood serum was neither raised nor discussed. *Bullock* involved a defendant who was escorted by police to the hospital for a forensic blood test. Blood was not drawn for medical and diagnostic purposes as with Dagnon. In addition:

"[D]efense counsel waived any objection he had to the legal efficacy of the blood test result. Defense counsel stipulated to the location of the subject test, the procedure employed to draw the blood, the type of test performed (ACA plasma alcohol, which determines alcoholic content of blood serum), the approval of said test by the Pennsylvania Department of Health, the chain of custody, the test result itself (0.135 percent alcohol in the blood serum), and the fact that the testing site and equipment used

were licensed and approved by the Pennsylvania Department of Health. . . .

"In fact, everything to which counsel stipulated indicates that he agreed that the blood-alcohol reading complied with the statute." *Commonwealth v. Bullock,* 359 Pa. Super. 150, 518 A.2d 824 (1986).

The law is explicit that test results be available to defendant and that a defendant has the right to have a physician of his own choosing administer a test the results of which may also be admissible in court. Defendant was not denied these rights although they may not have been explained to him. There is no requirement that defendant's blood sample be preserved. 75 Pa.C.S. §1547(g),(h); *Commonwealth v. Tillia,* 359 Pa. Super. 302, 518 A.2d 1246 (1986).

The Departments of Health and Transportation have prescribed procedures for the *chemical testing* of breath on devices approved by the Department of Health. This was mandated by Act of Assembly. 75 Pa.C.S. §1547(c)(1). (emphasis supplied)

The Department of Health is required to prescribe the equipment and procedures used for the chemical testing of blood and urine under that same statute. The only procedures (guidelines) promulgated by the Department of Health in Pennsylvania for the testing of blood are those set forth by NCCLS in Blood Alcohol Testing in the Clinical Laboratory (def. exh. A). As already stated those procedures relate to the testing of whole blood. The Department of Health has neither approved equipment nor procedures for the chemical testing of whole blood for forensic purposes.

Under the Clinical Laboratory Act the Department of Health has licensed laboratories and prescribed standards and equipment for the chemical

testing of blood serum but only for medical and diagnostic purposes.

Therefore, based on the facts and the conclusions of the court as to the law the court enters an order as follows.

## ORDER OF COURT

And now, February 8, 1991 the motion of John M. Dagnon to suppress evidence of the blood alcohol test and results performed on him at the Allegheny General Hospital on April 16, 1990, as a result of a vehicle accident on April 15, 1990, is granted.

The test and its results shall not be used by the Commonwealth at the trial of defendant on the charges filed at the above term and number.